(No. 78062.—

DAVID COLE *et al.* (David Cole, Appellant) v. LOIS BYRD *et al.* (Community Grain Company *et al.*, Appellees).

*Opinion filed September 21, 1995.*

Jerome Mirza & Associates, Ltd., of Bloomington (David V. Dorris, of counsel), for appellant.

Costigan & Wollrab, P.C., of Bloomington (Dawn L. Wall, of counsel), for appellees.

JUSTICE NICKELS delivered the opinion of the court:

The issue presented in this matter is whether an insurer is entitled to reimbursement from a plaintiff for payments the insurer made to a consulting firm, purportedly on the plaintiff's behalf. The insurer seeks reimbursement from proceeds the plaintiff recovered from third-party tortfeasors. The circuit court of De Witt County found that the services provided by the consulting firm were case-management services, and the insurer was not entitled to reimbursement under the Workers' Compensation Act (Act) (820 ILCS 305/1 (West 1992)). The appellate court reversed the circuit court, finding that the services provided were medical treatment services and that the insurer was entitled to reimbursement from the plaintiff. (265 Ill. App. 3d 798.) We granted the plaintiff's petition for leave to appeal (145 Ill. 2d R. 315).

## FACTS

Plaintiff David Cole suffered serious injuries when a truck he was driving collided with a school bus. At the time of the collision, plaintiff was employed by Community Grain Company (hereinafter the employer), and plaintiff suffered the injuries during the course of his employment. The employer carried workers' compensation insurance, provided by Farmland Mutual Insurance Company (hereinafter the insurer). Plaintiff received workers' compensation benefits for his injuries.

In addition to receiving workers' compensation benefits from the employer's insurer, plaintiff brought

an action in the circuit court against the driver of the school bus and the school district. The employer and the insurer were allowed to intervene in this action in order to protect their right to reimbursement for workers' compensation benefits paid or payable to plaintiff. A jury returned a verdict of $1,752,037 in favor of plaintiff and against the bus driver and school district. The driver and school district are not involved in this appeal. This appeal involves only plaintiff and the intervenors.

At trial, plaintiff sought recovery for numerous items of special damages relating to his injuries. One of these items was a bill for $12,577.96 in services rendered by Professional Rehabilitation Management (PRM). Nancy Peck, an employee of PRM and a registered professional nurse, performed these services. Peck is a medical rehabilitation coordinator. She acted as a consultant in this case to assure that proper medical care was given to plaintiff. At a hearing conducted outside of the jury's presence, the circuit court heard testimony from Peck to determine if plaintiff could recover the cost of Peck's services as special damages from the bus driver and the school district.

We note that the circuit court heard this testimony as part of the common law action against the third-party tortfeasors. At this stage, plaintiff sought to recover the cost of Peck's services from the third-party tortfeasors. The circuit court ruled that plaintiff could not recover Peck's services from the third-party tortfeasors. Thus, the jury was not informed of these services and did not consider them in awarding damages.

After the jury awarded damages, the insurer sought to enforce its workers' compensation lien against plaintiff's damage award. The insurer's lien included a charge for Peck's services. At this post-trial stage, the insurer sought to recover the cost of Peck's services from plaintiff. The circuit court ruled that the insurer could not receive reimbursement for Peck's services.

Peck's testimony establishes the nature of the services that are in dispute, and we therefore discuss her testimony in detail. Peck first testified about her relationship to plaintiff and the insurer and stated that she considered her services to be management:

"Q. Who do you in this relationship have an obligation to answer to: the patient or the insurance company?

A. I make recommendations to the insurance company. That is what I am hired for.

Q. Whose interests are you—as a professional, whose interests do you believe you are obligated to protect in this assignment: the insurance company or the patient?

A. The patient, to see that that person gets the best medical care, ends up being as good a person medically as he or she can be.

Q. Would you consider this to be medical treatment or management of the workers compensation case?

A. Management.

Q. Of the claim on behalf of the insurance company?

A. It's still objective. In other words, I make the recommendation to the insurance company that I feel is most appropriate to that case.

Q. Is one of the considerations that you have trying to keep down the costs for the workers comp insurance carrier?

A. If appropriate, some cost effectiveness is entered in.

Q. You certainly would never recommend sacrificing the effect of good medical care of the patient?

A. No. I don't even see the bills."

Peck also testified that she was hired to expedite plaintiff's medical care and would try to contain costs relating to medical equipment, such as hospital beds or long-term medication. She would not, however, make any cost-containment recommendations with respect to actual medical care.

Next, Peck testified as to how her time was billed:

"Q. Did you make charges for the professional time that you spent in all the functions in the David Cole case.

A. Yes.

Q. Would that include charging for the time you spend

consulting with the insurance company concerning this case?

A. Somewhat. Not a lot probably.

Q. How about with the attorneys that are involved in the litigation, do you make charges for that?

A. Yes."

Peck then discussed some of the services she provided to plaintiff. She interviewed plaintiff and made certain that he was satisfied with his medical care. Peck would attend medical office visits and physical therapy with plaintiff and provide moral support. In addition, Peck investigated potential physical therapy facilities to see if plaintiff could attend a more convenient facility than the one he was attending at that time. This was unsuccessful. Peck also stated that she considered plaintiff's home health care after his surgeries to determine his needs. Peck visited plaintiff's home to determine if the kitchen and bathroom could be modified to make them more accessible to plaintiff. The record does not show if any modifications were made. During this entire time, Peck would try to recommend more efficient management.

Peck was also questioned about her medical treatment of plaintiff and her reports to the insurer:

"Q. Did you ever actually treat David Cole medically speaking?

A. No.

Q. In fact you can't do that because you are a registered nurse; not a medical doctor, are you?

A. No.

Q. Now, you were hired by Nedra [sic] Owen of Farmland Insurance Company; is that correct?

A. Yes.

Q. And when you would issue reports, you would issue your reports made addressable to Nedra [sic] Owen at Farmland? Let me hand you one of these dated July 30th, 1990. Would this be the typical format of a report from the insurance carrier?

A. Yes.

Q. Would you look on page two of that report, the last page. There is no carbon copies to the patient David Cole on that report are there.

A. No.

Q. In fact it was routine for you not to report to David Cole but only to the insurance company, correct?

A. Right.

\* \* \*

Q. And if the insurance company pulled the plug and said, Nancy, we don't want you to work on the case any more that would be that and you wouldn't work on the case any more, true?

A. Yeah.

Q. If they said we want you to do more work on the case, you would do more work?

A. Yes.

Q. No matter what the patient said, what the insurance company said is what would govern your activity, correct?

A. Correct."

After hearing Peck's testimony, the circuit court ruled that PRM's charges were a case-management expense, not medical treatment. At this point, the circuit court was considering whether plaintiff could present the cost of these services to the jury. The court concluded that the expense was the insurer's expense, not plaintiff's. Accordingly, plaintiff was not allowed to recover this expense from the third-party tortfeasors as damages arising from plaintiff's medical care and treatment. The bill was not presented to the jury, and the jury did not consider it in assessing plaintiff's damages. The insurer did not participate at the hearing, and plaintiff did not appeal the ruling.

After the trial was over, on the insurer's motion the circuit court conducted a hearing to determine how much reimbursement the insurer should receive for the workers' compensation benefits it had paid to plaintiff. The insurer would receive this reimbursement from

plaintiff's judgment against the third-party tortfeasors. At the post-trial hearing, plaintiff disputed the bill for $12,577.96. In support of reimbursement, the insurer presented testimony from Nydra Owen, who works for the insurer as a master claims adjuster and who retained the services of PRM.

Owen testified that she retained Peck because of the serious injuries suffered by plaintiff. Owen stated that, although she wanted to cut costs for the insurer, her primary motivation was to make sure that plaintiff received the best care. Peck was not required to seek the most cost effective medical care. According to Owen, Peck would explain the treatments of the various doctors to plaintiff and provide moral support. Peck coordinated the service between various medical providers; she did not provide any treatment.

The circuit court again concluded that the bill represented a case-management expense. The court ruled that the insurer could not receive reimbursement from plaintiff for this expense. On appeal of this issue, however, the appellate court concluded, as a matter of law, that the bill represented medical treatment. Specifically, the court concluded that Peck's services were "instruction, and training necessary for the physical, mental, and vocational rehabilitation" of plaintiff. (265 Ill. App. 3d at 802.) The court also stated that the services were performed basically for plaintiff's benefit. The issue we resolve is whether Peck's services were necessary medical or rehabilitative services for which the insurer is entitled to reimbursement.

## ANALYSIS

Under the Act, when an employee is injured in the course of his employment, the employer may be obligated to pay benefits, even if the employer is not at fault for the injury. If the employee also recovers from a third party, the employer may be entitled to reimbursement

for benefits it has paid, or will pay, to the employee. The reason for this reimbursement is to prevent the employee from recovering twice for the same injury: once from employer and once from the third party. (*Reno v. Maryland Casualty Co.* (1962), 27 Ill. 2d 245, 248.) Thus, the Act provides "a remedy to employers who must pay compensation to their employees injured by a third-party tort-feasor." *Reno*, 27 Ill. 2d at 248.

Section 8(a) of the Act provides:

> "The employer shall provide and pay for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury. The employer shall also pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto. If as a result of the injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required." (820 ILCS 305/8(a) (West 1992).)

The statute requires an employer to pay for necessary medical and rehabilitative services. In turn, the employer is entitled to reimbursement if the employee recovers from a third party. (See 820 ILCS 305/5(b) (West 1992).) In this case, plaintiff disputes whether the services provided by Nancy Peck constitute necessary medical or rehabilitative services under section 8(a).

We first consider the appropriate standard of review. Whether an expense constitutes a necessary medical or rehabilitative expense under section 8(a) is ordinarily a question of fact. (*Quality Wood Products Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 417, 421-23; *Zarley v. Industrial Comm'n* (1981), 84 Ill. 2d 380, 386-87.) We note that, in many instances, an employer's obligation to pay for medical and rehabilitative services will be determined by the Industrial Commission. In making

this determination, the Commission must "resolve conflicts in the evidence, draw inferences from witness testimony and determine witness credibility and the weight to be accorded to such testimony." (*Zephyr, Inc. v. Industrial Comm'n* (1991), 215 Ill. App. 3d 669, 675.) Because this determination is a factual determination, the Commission's finding is overturned on appeal only if contrary to the manifest weight of the evidence. *Quality Wood*, 97 Ill. 2d at 421; *Zarley*, 84 Ill. 2d at 386.

In this case, the circuit court, rather than the Commission, determined whether Peck's services were necessary medical or rehabilitative services, for the purpose of determining the insurer's right to reimbursement. Although the Commission was not involved in this case, the inquiry is no different whether the circuit court or the Commission makes the determination. The circuit court heard testimony from two witnesses. Based on this testimony, the circuit court was required to draw an inference as to the type of service provided by Peck. In this case, the circuit court specifically noted that Peck's testimony and demeanor indicated that she was managing the file on behalf of the insurer rather than providing medical service to plaintiff. We therefore consider whether the circuit court's determination is against the manifest weight of the evidence. We find that the circuit court's determination is not against the manifest weight of the evidence.

In determining whether the insurer may seek reimbursement, we consider the nature of the services provided by Peck. The statute specifically limits the employer's obligation to necessary medical services "reasonably required to cure or relieve [the employee] from the effects of the accidental injury." (820 ILCS 305/8(a) (West 1992).) Peck testified that she monitored plaintiff's treatment, accompanied him to office visits and physical therapy, investigated medical services, and provided

moral support. Essentially, she managed and supervised the medical treatment provided by others. She did not herself provide any medical treatment or diagnosis to plaintiff. In fact, Peck considered her work to be management of the workers' compensation case, not medical treatment. Peck also stated that she considered cost effectiveness and cost containment while managing the file. These facts support the circuit court's determination that Peck did not provide necessary medical or rehabilitative services.

In addition, we consider the nature of the relationship between Peck and the parties. Peck made recommendations only to the insurer, not to plaintiff. The insurer, not plaintiff, controlled the right to stop Peck's continued services or expand them. The reports prepared by Peck were never sent to plaintiff or his attorneys. The insurer controlled all the work and received all the reports. PRM charged the insurer for time Peck spent consulting with the insurer and discussing the case with attorneys in preparation for litigation.

Under the Act, subject to some limitations, an injured employee is entitled to choose his medical treatment. (See 820 ILCS 305/8(a) (West 1992).) In this case, plaintiff never sought Peck's services, and no doctor or other medically trained person retained by plaintiff recommended them. The record suggests that plaintiff had little choice in choosing the service, controlling the service, deciding whether to accept the service, or questioning the cost of the service. These facts suggest that Peck's services were principally on behalf of the insurer, not plaintiff.

The Act authorizes reimbursement for necessary medical and rehabilitation services. It does not, however, authorize reimbursement for an insurer's expenses. An insurer incurs numerous expenses in handling a workers' compensation case. As plaintiff notes, some of these

expenses include the need to retain legal counsel to advise the insurer, the salaries of claims adjusters, the cost of investigating the validity of a claim, and the cost of independent medical examinations (see 820 ILCS 305/12 (West 1992)). The insurer has an interest in effectively managing and overseeing plaintiff's medical treatment. Peck was hired by the insurer to protect this interest.

Although the insurer's expenses may provide some benefit to an injured employee, they are not reimbursable. (See *Ziegler v. Department of Labor & Industries* (1985), 42 Wash. App. 39, 708 P.2d 1212 (cost of independent medical examinations, not requested by employee, was an administrative expense and not reimbursable because benefit to employee was incidental).) An insurer's expenses are simply not considered "compensation" paid to plaintiff. (2A A. Larson, Workmen's Compensation § 74.31(a), at 14—488 through 14—489 (1994).) Otherwise, any expense of the insurer that provides some benefit to a plaintiff would be reimbursable. They are expenses that must be borne by the insurer.

The insurer argues that an employer's obligation to provide medical and rehabilitative services has been interpreted broadly. According to the insurer, an employer has an obligation to provide such things as assisted home care, nursing care, and remodeling expenses. (See *Burd v. Industrial Comm'n* (1991), 207 Ill. App. 3d 371 (fiancee's nursing services to paralyzed employee were necessary medical expense); *Zephyr*, 215 Ill. App. 3d 669 (modification of home to make it wheelchair accessible to accommodate employee's paralysis was necessary medical expense); but see *Rousey v. Industrial Comm'n* (1992), 224 Ill. App. 3d 1096 (spouse's housekeeping services and supervision of employee were not necessary medical expense).) The insurer contends that an employer's right to reimbursement must be just as

broad as the employer's obligation to provide medical care.

The cases cited by the insurer are distinguishable. In this case, the circuit court determined that Peck provided rehabilitation management and consultation services for the insurer. She coordinated and supervised some of the medical treatment but did not provide any treatment or diagnosis herself. Instead, Peck acted on behalf of the insurer to promote the insurer's interest. Peck's services cannot be considered similar to a nursing service, home care service, or remodeling expense which is sought by an employee or an employee's doctors and is needed to treat the long-term effects of an employee's physical injuries. The circuit court's determination was not against the manifest weight of the evidence.

Because of the foregoing discussion, we need not address plaintiff's other arguments. The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*