**Patrick J. CAMPBELL,**
**Appellant–Plaintiff,**

v.

**ECKMAN/FREEMAN & ASSOCIATES,**
**Appellee–Defendant.**

No. 71A04–9602–CV–67.

Court of Appeals of Indiana.

Sept. 19, 1996.

---

Roger A. Weitgenant, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellant–Plaintiff.

Patrick J. Hinkle, Edward N. Kalamaros & Associates, South Bend, for Appellee–Defendant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant Patrick J. Campbell appeals from the grant of summary judgment in favor of Defendant–Appellee Eckman–Freeman & Associates in his suit for negligence.

We affirm.

### ISSUE

Campbell raises one issue: Whether the trial court erred in finding that Eckman–Freeman owed no duty to Campbell as a matter of law.

### FACTS AND PROCEDURAL HISTORY

This case arises from medical care and treatment provided to Campbell following a work-related injury. Campbell suffered an injury to his arm while at work and medical treatment was provided pursuant to the Indiana Worker's Compensation Act. Ind. Code 22–3–2 *et. seq.* Eckman–Freeman is a company that provides a case monitoring service to insurance companies, employers and clients involved in worker's compensation claims and other claims for physical injuries brought against them. Essentially, Eckman–Freeman provides services to assist and monitor the care given to injured employees while the employee is receiving medical care and rehabilitation. In this case, an Eckman–Freeman Rehabilitation Specialist, Sherrie

Brewington, was assigned to monitor Campbell's worker's compensation claim against Manpower with the goal of returning him safely to work. Brewington attended doctor's appointments with Campbell, monitored his physical therapy, and monitored his compliance with treatment plans.

Campbell initiated this lawsuit by filing a medical negligence form complaint against J. Michael Kelbel, M.D. and Eckman–Freeman & Associates. Campbell was not represented by counsel at the time. Upon motion by Dr. Kelbel, the trial court dismissed him from the case for lack of subject-matter jurisdiction, due to Campbell's failure to first submit the case to the medical review panel as required by the Indiana Medical Malpractice Act. *See* Ind.Code 27–12–8–4 (1993). Subsequently, the matter was submitted to the medical review panel, which found the evidence did not support the conclusion that Dr. Kelbel failed to meet the applicable standard of care as charged in the complaint.

Thereafter Eckman–Freeman filed a motion captioned *Motion For Summary Judgment Or In The Alternative, Motion To Dismiss For Lack Of Subject Matter Jurisdiction*. Specifically, Eckman–Freeman argued that there were no genuine issues for trial, or in the alternative, that the exclusivity provision of the Indiana Worker's Compensation Act mandated dismissal for lack of subject-matter jurisdiction. Campbell filed his response and Eckman–Freeman filed its reply by the end of 1994, and a hearing was held in January of 1995. In November 1995, the trial court granted Eckman–Freeman's motion for summary judgment finding that "there [was] no genuine issue of material fact as to whether Eckman/Freeman owed to Plaintiff Campbell a duty of care ... " (R. 182). The trial court did not address Eckman–Freeman's 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction. Campbell appeals.

### STANDARD OF REVIEW

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *L.K.I. Holdings, Inc. v. Tyner*, 658 N.E.2d 111, 118 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* When reviewing summary judgment rulings, we may consider only those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. T.R. 56(C), (H); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Hermann v. Yater*, 631 N.E.2d 511, 513 (Ind.Ct.App.1994), *reh'g denied.* Once the movant satisfies this burden, the burden shifts to the nonmoving party to produce specifically designated facts showing the existence of a genuine issue. *Id.*

■ When reviewing the trial court's decision on a motion for summary judgment, we apply the same standard as the trial court. *Gilliam v. Contractors United, Inc.*, 648 N.E.2d 1236, 1238 (Ind.Ct.App.1995), *trans. denied.* We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Haas Carriage, Inc. v. Berna*, 651 N.E.2d 284, 287 (Ind.Ct.App. 1995). Any doubt as to the existence of a factual issue should be resolved against the moving party. T.R. 56(C); *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Summary judgment is rarely appropriate in negligence actions. *Kelly v. Ladywood Apartments*, 622 N.E.2d 1044, 1046 (Ind.Ct. App.1993), *reh'g denied, trans. denied.*

### DISCUSSION AND DECISION

Due to the manner in which Campbell filed this action, there are threshold procedural issues that we feel compelled to address. Campbell's *"Proposed Complaint"* against Dr. Kelbel and Eckman–Freeman is a form complaint used by the Indiana Department of Insurance for claims brought under the Indiana Medical Malpractice Act. It is alleged in the complaint that Dr. Kelbel as well as Eckman–Freeman are health care provid-

ers as defined in the Act, and that due to their negligence, Campbell suffered nerve and muscle damage to his right shoulder and arm which caused him pain and suffering, loss of wages and mental anguish.

As noted above, Dr. Kelbel was initially dismissed from the action due to Campbell's failure to submit the case to a medical review panel. Eckman–Freeman did not elect to move for dismissal under this premise because they are not health care providers as defined under the Medical Malpractice Act. Rather, Eckman–Freeman moved for summary judgment, or in the alternative for dismissal for lack of subject-matter jurisdiction under T.R. 12(B)(1). The trial court granted summary judgment in favor of Eckman–Freeman, and did not rule on the T.R. 12(B)(1) part of the motion.

### I. Subject–Matter Jurisdiction

#### A. Medical Review Panel As Procedural Requisite to Subject–Matter Jurisdiction

■ The first threshold issue is whether the trial court lacked subject-matter jurisdiction due to Campbell's failure to submit the cause to the Department of Insurance and obtain an opinion from a medical review panel before filing his complaint with the trial court. It is fairly clear that although Campbell, acting *pro se* at the time of filing the complaint, filed a complaint alleging medical negligence, his claim is one for ordinary negligence. We treat pleadings according to their content rather than their caption. *Ground v. Methodist Hosp. of Indiana, Inc.,* 576 N.E.2d 611, 613 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* As such, Campbell's complaint alleged an ordinary negligence claim and therefore was not governed by the Indiana Medical Malpractice Act.

Pursuant to section 27–12–8–4 of the Indiana Medical Malpractice Act, submission of a proposed complaint to the medical review panel is a condition precedent to filing a medical malpractice claim in Indiana. "[I]f the defendant is a qualified health care provider under the Act, a proposed complaint submitted to the medical review panel and a decision by the medical review panel upon the complaint is required prior to instituting

an action in an Indiana state court of general jurisdiction." *Putnam County Hosp. v. Sells,* 619 N.E.2d 968, 970 (Ind.Ct.App.1993) (quoting *St. Anthony Medical Center, Inc. v. Smith,* 592 N.E.2d 732, 735 (Ind.Ct.App. 1992), *trans. denied* ).

Although Brewington is a registered nurse, she was not providing health care when acting in the capacity of rehabilitation specialist for Eckman–Freeman, nor does she fall within the definition of *health care provider* as provided in the Malpractice Act. *See* Ind.Code 27–12–2–14 (1996). Therefore, Campbell's failure to submit the cause to a medical review panel did not deprive the court of subject-matter jurisdiction.

#### B. The Exclusivity Provision of the Worker's Compensation Act

■ The second threshold issue as we see it is whether Campbell's sole remedy lies within the Worker's Compensation Act and whether the trial court had subject-matter jurisdiction to adjudicate his negligence claim. Eckman–Freeman contends that because they were hired by Manpower's worker's compensation carrier, CNA Insurance, to monitor Campbell's worker's compensation claim, the exclusivity provision of the Act applies thereby precluding Campbell from bringing any common law claim against Eckman–Freeman.

■ Our supreme court has recently held in a series of decisions that the use of a summary judgment motion is inappropriate where the Act's exclusivity provision is raised as a bar to plaintiff's complaint. *Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282, 1286 (Ind.1994), *reh'g denied; Foshee v. Shoney's, Inc.,* 637 N.E.2d 1277, 1280 (Ind.1994). Subject-matter jurisdiction is the power of a court to hear and decide a particular class of cases. *Putnam County Hosp.,* 619 N.E.2d at 970. Subject-matter jurisdiction cannot be waived, and may be raised by the parties or the court at any time, including on appeal. *Id.*

The Worker's Compensation Act provides compensation to employees for injuries by accident which arise out of and in the course of their employment. *Ransburg Industries*

*v. Brown,* 659 N.E.2d 1081, 1082 (Ind.Ct.App. 1995), *reh'g denied.*

■ The Act's exclusive remedy provision provides that

> The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5–2–6.1.

Ind.Code 22–3–2–6 (1993). This section limits an employee whose injury meets the jurisdictional requirements of the Act to the rights and remedies provided by the Act. Thus, if an employee's injury occurred by accident and arose out of and in the course of employment, he is entitled to worker's compensation and Ind.Code 22–3–2–6 bars a court from hearing any common law action brought by the employee for the same injuries. However, the Act permits actions against third party tortfeasors, so long as the third party is neither the plaintiff's employer nor his fellow employee. *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145, 1150 (Ind.Ct. App.1995). The right of an injured employee to assert an action for damages against a person other than the employer or fellow employee is expressly recognized in Ind.Code 22–3–2–13 (1993).

In *Stump v. Commercial Union,* 601 N.E.2d 327 (Ind.1992), our supreme court held that the exclusive remedy provision does not prohibit an employee from asserting a cause of action against the employer's worker's compensation carrier for injuries proximately caused by the insurance carrier's tortious conduct such as gross negligence, intentional infliction of emotional distress, or constructive fraud.[1] In *Stump,* the

injured employee lost both of his legs in an industrial accident. While Stump's condition required him to receive extensive care and exercise, he left the hospital after only fourteen days based on assurances from the insurer that it would provide him with the required outpatient therapy, and special accommodations in his home. The insurer then reneged on its promise. Persuading Stump to leave the hospital early substantially reduced the insurer's costs, and caused Stump to suffer permanent additional injuries.

The supreme court held that these were not injuries within the exclusive jurisdiction of the worker's compensation board. It determined that the insurer had assumed a duty in addition to the duties imposed by the Act, and that breach of this additional promise could not be remedied by the Act. The court reasoned that the mere fact that the insurance carrier has a relationship with the employer should not afford it special immunity under the Act. *Id.* at 331. The court noted that various entities may be involved in assisting employers to fulfill their obligations under the worker's compensation laws, such as ambulance services, hospitals, physicians, and others providing medical and rehabilitative care covered under worker's compensation. The court said "[w]e find no adequate justification to absolve worker's compensation insurance carriers and other such third parties of their responsibilities in the event of additional injuries or harm proximately caused by their actionable conduct." *Id. Stump* is limited in that it permits an injured worker to pursue only certain claims against a worker's compensation carrier "in the event of additional injuries or harm proximately caused by [its] actionable conduct." *Id.*[2]

■ Although we are not here dealing with a case of unconscionable breach of duty

---

1. The court also held that there is no fiduciary duty owed by a worker's compensation insurer to a claimant employee. *Stump,* 601 N.E.2d at 334.

2. The United States District Court for the northern district of Indiana recently clarified the limitations of the *Stump* decision and stated "[*Stump*] was only meant to prevent insurance carriers from hiding behind the exclusive reme-

dy provision of the Worker's Compensation Act when their tortious acts (such as misrepresentation, refusal to provide promised services, fraudulent reporting intending to deprive the employee of benefits) causes the employee to incur injuries separate from his work-related injuries." *Rayford v. Lumbermens Mut. Cas. Co.,* 851 F.Supp. 1247, 1249 (N.D.Ind.1994).

as was the case in *Stump,* the rationale employed is equally applicable. The alleged negligent conduct of Eckman–Freeman is not the kind of harm for which the Worker's Compensation Act was calculated to compensate. Moreover, the remedies provided in the Worker's Compensation Act are in derogation of the common law, and as such must be strictly construed against limitations on a claimant's right to bring suit. *McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016, 1018 (Ind. 1995).

Having established that the trial court was vested with subject-matter jurisdiction to adjudicate the common law claims, we reach the substantive question of whether Campbell has asserted a cause of action for negligence.

## II. *Negligence: Did Eckman–Freeman Owe a Duty to Campbell?*

The dispositive issue is whether Eckman–Freeman, a company hired to monitor the rehabilitation of Campbell's work-related injury, owed a duty of reasonable care to Campbell.

 To premise a recovery on a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991), *reh'g denied* (citing *Miller v. Griesel,* 261 Ind. 604, 611, 308 N.E.2d 701, 706 (1974)). There are no more legal elements to the tort of medical negligence than there are to other negligence torts. *Burke v. Capello,* 520 N.E.2d 439, 441 (Ind.1988).

 Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively for the courts. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994). Three factors must be considered and balanced in order for a court to impose a duty: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb,* 575 N.E.2d at 995. Such duty of care will be found by the courts where reasonable persons would recognize it and agree that it exists. *Stump,* 601 N.E.2d at 332. In the absence of the existence of a duty, there can be no negligence. *Hooks SuperX,* 642 N.E.2d at 517 (citing *Webb,* 575 N.E.2d at 995).

Whether a private entity hired by an employer's worker's compensation carrier to provide rehabilitation services to the injured employee owes a duty of care to the injured employee appears to be an issue of first impression in Indiana. A similar issue was addressed by the Supreme Court of Alabama in *International Rehabilitation Associates, Inc. v. Adams,* 613 So.2d 1207 (Ala.1992). In that case, the worker's compensation recipient brought a fraud by misrepresentation action against a rehabilitation company hired by his employer's worker's compensation carrier, CIGNA Insurance. CIGNA's claims adjuster retained the services of Intracorp to help decide how to handle Adams's claim. The employment relationship between CIGNA and Intracorp was evidenced by a written "Request for Service" which specifically requested that Intracorp perform "aggressive medical management" and a full initial evaluation, including contacts with Adams, his employer, and his physician. *International Rehab.,* 613 So.2d at 1208.

The rehabilitation specialist initially assigned to Adams's case began by contacting Adams's attorney seeking consent to begin her evaluation on Adams and a signed consent form. Adams's lawyer responded by requesting a complete description of the services Intracorp would be extending to Adams as well as an explanation and full disclosure of the relationship between CIGNA and Intracorp. Intracorp forwarded this response to the CIGNA claims adjuster, who then suspended Adams's benefits due to his "refusal to accept rehabilitation." *Id.* at 1209. The following day, the rehabilitation specialist responded to the attorney's letter by sending information regarding Intracorp's services. Intracorp explained that it was a professional, private, service organization

that had a staff of Registered Nurses and Rehabilitation Counselors who specialized in assisting injured persons to recover and return safely to work. *Id.* A listing of some of their services was included as follows: interpret medical information; coordinate activities and communication between all involved health care professionals; assure that the medical treatment plan will secure the best and quickest recovery; provide professional advice to develop a rehabilitation plan; assist the person to take control of his/her recovery; and work with employers to facilitate a safe return to work at the earliest possible time. These documents also clearly stated that Intracorp was retained by the insurance company and that Intracorp's involvement and services were based on the insurance company's request. The letter further stated "[w]e're here to help, and we'd like you and your family to be as comfortable as possible with our involvement in your recovery." *Id.*

One month after this correspondence, Adams sued CIGNA because it had suspended his benefits. During this time, Adams told his physician and a therapist that he expected to be placed in a rehabilitation program with Intracorp in the near future. When Adams met with Bradly, an Intracorp Rehabilitation Specialist, for his initial consultation, he asked her whose interest she was there to serve, and she replied that she served the insurance company's interest at that point, but that after their initial meeting she would represent his interests. *Id.* Bradly performed no further services for Adams. The following month, Adams and CIGNA settled the worker's compensation lawsuit. As part of the settlement, CIGNA was required to pay for Adams's rehabilitation and medical expenses.

Adams then sued Intracorp alleging negligence in the performance (or nonperformance) of its professional duties, wantonness, fraud, and intentional interference with a business relationship. The case was submitted to the jury on the negligence and fraud by suppression causes of action, and the jury returned a verdict against both Intracorp and Bradly, awarding $80,000 in compensatory damages and $75,000 in punitive damages.

On appeal, Intracorp and Bradly argued that the trial court erred in denying their motion for a directed verdict on the fraud claim and erred by refusing to grant their request for a JNOV as to the fraud cause of action. In discussing whether Adams had sufficiently proved suppression of a material fact, the court discussed Intracorp's duty to disclose. Through Intracorp's "Rehabilitation Specialist Resource Guide," Adams presented evidence that it was Intracorp's written policy to fully inform clients of its relationship with them. Specifically, the Resource Guide stated that

> Rehabilitation counselors who provide services at the request of a third party will clarify the nature of their relationships to all involved parties. Rehabilitation counselors employed by third parties as case consultants or expert witnesses, where there is no pretense or intent to provide rehabilitation counseling services directly to clients beyond file review, initial interview and/or assessment, will clearly define, through written or oral means, the limits of their relationship.

*Id.* at 1215. In affirming the judgment entered on the jury's verdict, the court held that

> Intracorp, by its own business policy, had an obligation to disclose to Adams the limited nature of its undertaking for CIGNA. That is, because of the particular circumstances of this case, especially the stated company policy ... Intracorp and Bradly had a duty to disclose to Adams that CIGNA had hired them to perform only an initial evaluation ... Intracorp and Bradly had a duty to disclose to Adams that they had not been hired by CIGNA to perform the full range of services discussed in the services brochure provided to Adams.

*Id.* at 1215. Thus, while the duty to disclose facts to the client in *International Rehab.* was based in part on the affirmative representations made in the company's service brochure, the parties' failure to raise the negligence duty of due care issue and the court's failure to address it suggests a tacit acceptance of the existence of the duty. In-

deed, in *International Rehab.*, the jury found in favor of Adams on his negligence claim.

Another instructive case is *Cole v. Byrd*, which was decided by the Illinois Supreme Court last year. 167 Ill.2d 128, 212 Ill.Dec. 234, 656 N.E.2d 1068 (1995). In *Cole*, a worker's compensation claimant was awarded a judgment against a third-party tortfeasor and the worker's compensation carrier sought reimbursement of expenses. Among the expenses were services from a rehabilitation coordinator hired by the insurer. The Illinois Supreme Court held that medical rehabilitation services provided by a rehabilitation coordinator at the insurer's request were primarily for the benefit of the insurer and were not reimbursable necessary medical or rehabilitation services.

In deciding this issue, the court considered the nature of the relationship between a medical rehabilitation coordinator, the insurance company by which they are hired, and the injured worker for whom they are providing the service. In *Cole*, the court was engaged in this consideration for the limited purpose of deciding whether the services were primarily on behalf of the injured worker, and thus reimbursable under the Act, or on behalf of the insurer, in which case they would not be reimbursable under the Act. However, we find some of the court's comments instructive on the issue of whether a rehabilitation specialist should owe a duty to the injured worker. The court noted that the rehabilitation specialist made recommendations only to the insurer and not to the injured worker; the insurer, not the injured worker, controlled the right to stop the services or expand them; and the rehabilitation specialist reported directly to the insurer. *Id.*, 212 Ill.Dec. at 239, 656 N.E.2d at 1073. The court further noted that the injured employee had little choice or control with regard to the rehabilitation service. *Id.* Ultimately, the court affirmed the lower court's findings that the rehabilitation specialist's demeanor and testimony indicated that she was managing the file on behalf of the insurer rather than providing any sort of service to the plaintiff. *Id.*, 212 Ill.Dec. at 240, 656 N.E.2d at 1074.

### A. Relationship

■ Turning to the facts of the case before us, the first question is whether the relationship between Eckman–Freeman and Campbell can support the conclusion that Eckman–Freeman owed Campbell a duty. It has long been established that the existence of a duty upon one to act with respect to another arises out of the relationship between them. *Hooks*, 642 N.E.2d at 517. In *Cole*, the Illinois court concluded that the relationship was primarily between the insurer and the rehabilitation company. 167 Ill.2d 128, 212 Ill.Dec. 234, 656 N.E.2d 1068. While we acknowledge that the medical rehabilitation coordinator is hired by the insurance carrier to expedite medical care, these companies by their own insistence are obligated to protect the interests of the injured employee. The injured worker relies on their professional skill and judgment in coordinating the necessary medical treatment. However, if the insurance carrier instructs a rehabilitation company to discontinue its services, the insurance carrier's instructions would govern.

It is undisputed that Eckman–Freeman was hired by Manpower's worker's compensation insurance carrier, CNA. It is further undisputed that neither Sherrie Brewington nor any employee of Eckman–Freeman provided medical care or treatment to Campbell. Based on the designated portions of Brewington's affidavit and deposition, she was employed as a Rehabilitation Specialist with Eckman–Freeman during the time of Campbell's treatment. On August 9, 1990, Brewington was assigned to monitor Campbell's rehabilitation while his worker's compensation claim against Manpower was pending. Brewington stated that although her employer was Eckman–Freeman, "the actual approval to proceed with activities related to Mr. Campbell's rehabilitation was provided by CNA Insurance." (R. 87). Brewington monitored Campbell's progress, clarified information from Campbell's physicians and reported back to CNA. Specifically, Brewington stated in her affidavit that "[t]hroughout the period of time that [she] monitored Mr. Campbell's case, [she] did not make any diagnosis, nor did [she] prescribe or provide

any care or treatment. Rather, [she] attended doctor's appointments with Mr. Campbell, monitored physical therapy and his compliance with the treatment plan, maintained communication with the physical therapist and the doctors and recommended certain physicians." (R. 80).

Eckman–Freeman President, Jean Eckman, prepared a written job description for the rehabilitation specialist which characterized the position as one of "liaison between the employer, client, physician and all parties involved, in order to return the client to work in an appropriate job which fits the physical limitations set by the physician." (R. 86). The first sentence of the prepared job description provides that "[t]he rehabilitation specialist provides services to clients receiving benefits from insurance carriers from various disability compensation systems." (R. 86).

Based on the limited facts before us, we do not know whether Campbell perceived that Brewington was acting on his behalf, whether Campbell was relying on her to comply with the pre-surgical requisites, and whether Brewington had actual knowledge that Campbell was relying on her professional services. Weighing all of these considerations, we find that Eckman–Freeman did not have a relationship with Campbell which would support a duty in negligence.

### B. Foreseeability

The second question is whether Campbell was a reasonably foreseeable victim injured by a reasonably foreseeable harm. Of course "[t]he duty of reasonable care is not ... owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Webb*, 575 N.E.2d at 997 (citing *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 574 (Ind.Ct.App.1986), *reh'g denied, trans. denied*). Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. *Webb*, 575 N.E.2d at 997 (citing PROSSER AND KEATON ON TORTS, Sec. 53 (5th ed.1984)).

In the case before us, Campbell seems to premise his theory of negligence on a supposed error by Brewington which caused his originally scheduled surgery to be postponed one month. Following Campbell's 1989 injury at work, he consulted with several physicians including an orthopedic specialist and a neurologist. Campbell was initially prescribed an aggressive physical therapy treatment plan as a nonsurgical alternative. However, when Campbell's symptoms persisted, he became frustrated and demanded surgical intervention. Eventually, surgery was scheduled by Dr. Misamore for April 22, 1991, pending CNA approval. Brewington was not present at the time the surgery was scheduled; however, another Eckman–Freeman Rehabilitation Specialist, Gail Ditmore, was there and relayed the information to Brewington. CNA required a second opinion prior to approving the surgery, and referred Campbell to Dr. Ribaudo for an evaluation.

Campbell and Brewington went to see Dr. Ribaudo on April 11, 1991. Dr. Ribaudo essentially opined that while surgical intervention was indeed appropriate and had been recommended by a reputable orthopedic surgeon, Dr. Ribaudo would prefer conservative treatment first. Dr. Ribaudo went on to say that if surgery prevails, then Campbell should receive postoperative treatment under the supervision of the surgeon to maximize the outcome. (R. 94, 95). Brewington relayed this information to Elaine Shaffer, the CNA claims adjuster, on April 12, and on April 19, the surgery was approved. However, the surgery scheduled for April 22, did not take place. Brewington's deposition testimony indicates that she has no recollection of canceling the surgery, and she does not know whether Campbell was informed that the surgery was canceled.

Dr. Misamore's office required that Campbell receive a physical examination prior to surgery. It's possible that Campbell did not receive that examination and therefore the surgery could not proceed; however, such conclusion would be a result of pure speculation on our part. What is clear is that the surgery did not take place and Brewington's records do not reveal any communication with Campbell with regard to the pre-sur-

gery examination. As of April 11, the pre-surgery examination had not been completed. Brewington's records do not indicate that she made any attempts to schedule the pre-surgery examination prior to April 22, 1991. Campbell ultimately received surgery in May of 1991.

In *Fawley v. Martin's Supermarkets, Inc.,* 618 N.E.2d 10, 13 (Ind.Ct.App.1993), *trans. denied,* we quoted from Justice Cardozo's opinion *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) wherein he explained the importance of the foreseeability component of duty as follows: "[t]he risk reasonably to be perceived defines the duty to be obeyed." While a rehabilitation company's failure to properly coordinate and communicate could create an unreasonable risk of harm to the injured employee, we do not find such a causal connection in this case so as to give rise to a duty.

### C. Public Policy

Finally, we turn to public policy considerations. "Duty is not sancrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Webb,* 575 N.E.2d at 997 (citing PROSSER AND KEETON, sec. 53). There are several competing policy issues implicated here as we see it. The medical rehabilitation coordinator is hired by the insurer with the goals of containing costs and returning the employee to work as expeditiously as possible, but also as safely as possible. On the other hand, the injured worker cannot be considered and treated as a party possessing equal bargaining power. The balancing of these important policy considerations is a task that should be reserved for the legislature. At the very least, companies that render rehabilitation services such as Eckman–Freeman should be required to disclose to the injured employee the limited nature of their obligations and make clear that they are employed by the insurance carrier.

Consideration of the relationship between the parties, foreseeability of the harm, public policy concerns, and the persuasive precedent discussed above convince us that no duty should be recognized under the particular facts of this case. This is not to say that the facts of a future case may not lead us to a different conclusion. If Campbell had succeeded in presenting genuine issues of material fact regarding behavior by Eckman–Freeman which caused Campbell additional injuries, then certainly public policy would dictate that Campbell be compensated for any resultant injury. However, Campbell has made no such showing.

### CONCLUSION

Accordingly, the trial court's grant of summary judgment in favor of Eckman–Freeman is affirmed.

BAKER, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I respectfully dissent. In the second full paragraph of page 934 of the slip opinion, the majority states that based on the limited facts presented, it does not have answers for three separate issues. Yet, in the following sentence, the majority states, "Weighing all of these considerations, we find that Eckman–Freeman did not have a relationship with Campbell which would support a duty in negligence." These two sentences are inconsistent and illustrate to me that the question, whether a private entity hired by an employer's worker's compensation carrier to provide rehabilitation services to the injured employee owes a duty of care to the injured employee, is not purely one of law.

In *State v. Cornelius,* we explained:

While the determination of whether these three factors [relationship, foreseeability, and public policy concerns] will lead to imposition of a duty is generally a matter for the court to decide, factual questions may be interwoven with the determination of the existence of a relationship and the foreseeability of harm, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the factfinder.

637 N.E.2d 195, 198 (Ind.Ct.App.1994), *trans. denied.* Believing that material factual ques-

tions are interwoven with the determination of the existence of a relationship between Campbell and Eckman–Freeman, I would reverse the order granting summary judgment.