David VAKOS, Appellant–Plaintiff,

v.

TRAVELERS INSURANCE a/k/a The Travelers; Crawford & Co.; Conservco; and Sharon Smith, R.N., Appellees–Defendants.

No. 02A03–9612–CV–435.

Court of Appeals of Indiana.

Feb. 23, 1998.

Patrick F. O'Leary, Goshen, for appellant-plaintiff.

Carolyn M. Trier, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellees-defendants.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff David L. Vakos appeals the trial court's decision granting appellees-defendants Travelers Insurance, Crawford & Company, Conservco, and Sharon Smith's (hereinafter collectively referred to as the "Appellees") contemporaneous motion to dis-

miss. The facts relevant to the appeal are set forth below.

Vakos was an employee of Emergency Radio Service, Inc. (ERS), located in Elkhart County, Indiana, and worked as a sales and service representative. On May 27, 1992, after picking up an item weighing approximately 90 lbs., Vakos injured his back. He was later diagnosed as having chronic low back pain and a status post-lumbar sprain.

ERS's worker's compensation insurer, Travelers Insurance (Travelers) and Crawford & Company (Crawford), an agent of Travelers, filed an agreement with the Indiana Worker's Compensation Board, on June 27, 1992, stipulating that Vakos had sustained an injury from the accident. Within its capacity as Travelers' agent, Crawford retained Conservco,[1] a medical management service company, which through its disability management services division offers case management services for injured workers, to manage Vakos' medical care coordination. On June 7, 1993, Conservco assigned Vakos' file to Sharon Smith, R.N., an employee of Conservco and a medical case manager. As a case manager, Smith's responsibilities included interviewing injured workers regarding their medical and vocational history, coordinating appointments for injured workers with health care providers for evaluations and medical treatment, reviewing injured workers' medical records, attending medical appointments with injured workers, contacting employers to discuss modifying jobs if necessary, and providing the treating physicians with this information. In her initial conversation with Vakos, Smith informed Vakos that she was a case manager nurse and would be assisting in coordinating Vakos' medical care.

At the time Smith began managing Vakos' case, Vakos' treating physician was Thomas Durham, M.D., an orthopedic surgeon. Shortly thereafter, however, Smith informed Vakos, by telephone, that Travelers and Crawford no longer wanted Vakos to be treated by Dr. Durham and had, instead, selected Todd Graham, M.D. to provide the medical treatment. Smith later sent a certified letter confirming her tele-

---

1. On January 1, 1995, Conservco was integrated into Travelers.

phone conversation with Vakos. In the letter, Smith informed Vakos that Dr. Graham was a physiatrist.[2]

On July 20, 1993, Vakos was examined by Dr. Graham, who recommended that Vakos attend a chronic pain management program at St. Joseph's Medical Center. Although Smith determined that the program was too costly, she assured Vakos that she would attempt to find a more cost effective pain management program.

When Smith failed to recommend another program, Vakos went to Dr. Graham for a follow-up visit and requested that Dr. Graham determine his permanent partial impairment[3] (PPI) rating. On August 3, 1993, Dr. Graham determined that Vakos' PPI rating was seven percent.

Ten months later, on May 25, 1994, Conservco, through Smith, referred Vakos to the WINN rehabilitation clinic in Michigan City for an evaluation. Following the evaluation, Vakos was again sent to see Dr. Graham. On October 26, 1994, following the visit, Dr. Graham found that Vakos' PPI rating had increased to 20 percent.

On May 22, 1995, Vakos filed an amended complaint against the Appellees. In his complaint, Vakos alleged that the Appellees had committed various acts of misconduct in coordinating his medical care following his work injury. The complaint advanced legal theories for recovery, including fraud, gross negligence, negligence, and malpractice. Vakos sought compensatory and punitive damages for the physical injuries he sustained as a result of the Appellees' mismanagement of his rehabilitation.

The Appellees sought dismissal of Vakos' complaint claiming that the Indiana Worker's Compensation Act requires Vakos to seek any relief exclusively from the worker's compensation board. The Appellees also filed a summary judgment motion alleging that no genuine issues of material fact existed and that the Appellees were entitled to summary judgment in their favor as a matter of law. The trial court took the motions under consideration, and on September 3, 1996, the trial court granted the motion to dismiss and mooted the summary judgment motion. Vakos now appeals the trial court's decision.

On appeal, Vakos raises two issues which we restate as follows:

(1) whether Vakos' complaint sets forth a cause of action against Travelers and Crawford which is not subject to the statutory immunity from tort liability provided pursuant to the Worker's Compensation Act; and

(2) whether Vakos' complaint sets forth a cause of action against Conservco and Sharon Smith which is not subject to the statutory immunity from tort liability provided pursuant to the Worker's Compensation Act.

We will address these issues simultaneously, as they both pose the same query: the extent to which the Worker's Compensation Act will provide immunity to the compensation carrier and its employees or agents.

▬▬ A motion to dismiss under Ind.Trial Rule 12(B)(6) is made to test the legal sufficiency of the claim, not the supporting facts. *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 52 (Ind.Ct.App.1993), *trans. denied*. On review, we determine whether the complaint states any allegation upon which relief could be granted. *Id.* A complaint cannot be dismissed under T.R. 12(B)(6) unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Id.* Further, a complaint need not state all elements of a cause of action. *Id.* We must take the facts alleged in the complaint as true and determine whether, in a light most favorable to the plaintiff, the com-

---

**2.** A physiatrist is a physician who specializes in physical medicine which is a branch of medicine concerned with the diagnosis and treatment of disease and disability by physical means such as radiation, heat, and electricity. *Webster's Collegiate Dictionary*, p. 877 (10th ed.1995).

**3.** "Impairment," as the word is utilized in the Worker's Compensation Act, "means either a partial or a total loss of the function of some part or parts of the body, or of the body as a whole, with the result that work opportunities are limited." Small, *Workmen's Compensation Law of Indiana* § 9.5, p. 247 (1950). "Permanent partial impairment" contemplates an impairment of the employee's physical abilities. *Id.* at 245. A finding of permanent partial impairment depends upon a finding of a limited usefulness of the body for work. *Id.* at 246.

plaint is sufficient to constitute a valid claim. *Id.*

■ The Worker's Compensation Act (Act) provides compensation to employees for injuries by accident which arise out of and in the course of their employment. *Campbell v. Eckman/Freeman & Associates,* 670 N.E.2d 925, 929 (Ind.Ct.App.1996), 'trans. denied. The exclusive remedy provision of the Act states:

> The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5–2–6.1.

IND. CODE § 22–3–2–6 (1993 Ed.). This section limits an employee whose injury meets the jurisdictional requirements of the Act to the rights and remedies provided by the Act. *Campbell,* 670 N.E.2d at 930. Thus, if an employee's injury occurred by accident which arose out of and in the course of his employment, he is entitled to worker's compensation, and IND. CODE § 22–3–2–6 bars a court from hearing any common-law action brought by the employee for the same injuries. *Id.* However, the Act does permit actions against third party tortfeasors, so long as the third party is neither the plaintiff's employer nor his fellow employee. *Campbell,* 670 N.E.2d at 930. It should be noted that as defined in IND. CODE § 22–3–6–1 (1993 Ed.), for the purposes of the Act, the term "employer" encompasses the employer's insurer where applicable. Still, the right of an injured employee to assert an action for damages against a person other than the employer or fellow employee is expressly recognized in IND. CODE § 22–3–2–13 (1993 Ed.). *Id.*

■ The Appellees assert that since Vakos' subsequent injury (that is, the additional injuries sustained due to the alleged mismanagement of his care which decreased his potential for rehabilitation) arose out of his employment, Vakos must present his claim to the worker's compensation board. Vakos, however, contends that this case falls within the exception to the exclusive remedy provision set forth in *Stump v. Commercial Union,* 601 N.E.2d 327 (Ind.1992) (a response to a certified question from the United States District Court, Northern District of Indiana, Fort Wayne Division).

In *Stump,* an agent of the worker's compensation insurance carrier acknowledged that the plaintiff, Leland Stump, who lost both legs in an industrial accident needed extensive therapy, home health care, medical supplies, transportation, and modifications to his home to accommodate his wheelchair. The agent, Crawford & Company, promised to provide all of these items to Leland in order to induce him to leave the hospital only 14 days after his accident and thereby decrease the costs the insurance carrier would be required to bear. Relying upon Crawford's representations, Leland left the hospital. Crawford then failed to provide the required services. As a result, Leland suffered additional physical injuries which precluded him from being fitted with permanent artificial limbs. *Id.* at 329, n. 1.

Our supreme court, in *Stump,* found that because various entities may be involved in assisting employers in fulfilling their worker's compensation obligations, such as ambulance services, physicians, hospitals, pharmacies, and medical device manufacturers, "[t]he relationship of the compensation insurance carrier to the employer should not afford it special immunity." *Id.* at 331. Thus, the court held that there was "no adequate justification to absolve worker's compensation insurance carriers and other such third parties of their responsibilities in the event of *additional injuries or harm proximately caused by their actionable conduct." Id.* (emphasis added). In so holding, the court concluded that:

> Indiana law will permit a cause of action by an injured employee against a worker's compensation insurance carrier for injuries proximately caused by the insurance carrier's tortious conduct such as gross negligence, intentional infliction of emotional distress, and constructive fraud. The exclusive remedy provisions of the Indiana Worker's Compensation Act, Ind.Code § 22–3–2–6, do not preclude these actions.

*Id.* at 334.

In *Rayford v. Lumbermens Mut. Cas. Co.,* 851 F.Supp. 1247 (N.D.Ind.1994), the United

States District Court for the Northern District of Indiana clarified the limitations of the *Stump* decision and stated:

'*Stump* was only meant to prevent insurance carriers from hiding behind the exclusive remedy provision of the Worker's Compensation Act when their tortious acts (such as misrepresentations, refusal to provide promised services, fraudulent reporting intending to deprive the employee of benefits) causes the employee to incur injuries separate from his work-related injuries.'

*Id.* at 1249. In *Rayford*, the plaintiff suffered a severe leg injury as the result of an industrial accident. As a result of the leg injury, Rayford began suffering from depression and psychological difficulties. The defendants (the worker's compensation insurers) voluntarily approved five counseling sessions for Rayford without requiring him to file a formal compensation claim with the worker's compensation board. At the expiration of the five sessions, however, the insurers terminated the counseling services even though Rayford had been diagnosed as a suicide risk. Soon thereafter, Rayford attempted suicide. During his hospitalization following the attempted suicide, the insurers temporarily terminated Rayford's worker's compensation benefits. Rayford sued the worker's compensation insurers for refusing to provide psychological services, claiming that he suffered a more severe depression as a result of the defendants' temporary termination of his benefits.

In determining that Rayford's complaint failed to state a claim for which relief could be granted, the court opined the following:

As Rayford's psychological injuries arose out and in the course of his employment he can seek relief under the Worker's Compensation Act. In fact, as noted earlier, Rayford's request for psychological counseling services is presently pending before the Worker's Compensation Board. It is clear that this court cannot usurp the power of the Worker's Compensation Board to make the determination of whether Rayford is entitled to additional benefits as requested by his Application for Adjustment of Claim. An injured worker cannot simply bypass the administrative procedures of the Worker's Compensation Act and elect to adjudicate his worker's compensation claim in federal court. *Stump* only permits an injured worker to pursue certain claims against a worker's compensation insurance carrier 'in the event of additional injuries or harm proximately caused by [its] actionable conduct.' 601 N.E.2d at 331. The undisputed evidence in this case overwhelmingly shows that Rayford's psychological disorders arose from and were proximately caused by his industrial accident and were not proximately caused by a misrepresentation or breach of duty by the defendants.

*Rayford v. Lumbermens Mut. Cas. Co.*, 840 F.Supp. 606, 611–12, (N.D.Ind.1993).

Here, Vakos is not claiming that the Appellees fraudulently or wrongfully denied or discontinued his compensation benefits with respect to any work-related injury. Nor is Vakos seeking the type of damages which would flow from such a claim: past due benefits, interest, costs, and fees. Instead, Vakos is claiming that the Appellees caused him direct physical harm (a PPI rating of 20 percent amounting to a decreased potential for rehabilitation) through their negligence in directing and advising him to obtain medical care, which Vakos alleges was improperly given to him. The acts of negligence, which Vakos alleges the Appellees committed, were committed subsequent to and independent of the original injury. Such injuries allegedly occurred as the result of the Appellees' negligence in directing Vakos' medical treatment, and not in processing the claim for benefits for the underlying injury. We, therefore, find that the Worker's Compensation Act does not preclude Vakos' suit and that the trial court erred in granting the Appellees' motion to dismiss.

The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

STATON and BARTEAU, JJ., concur.