2002 SD 155

**John GILCHRIST, Plaintiff and Appellant,**

v.

**TRAIL KING INDUSTRIES, INC., Defendant and Appellee.**

**No. 22158.**

Supreme Court of South Dakota.

Argued Aug. 27, 2002.

Decided Dec. 11, 2002.

Rick Johnson of Johnson, Eklund, Nicholson & Peterson, Gregory, J.M. Grossenburg, Winner, South Dakota, Attorneys for plaintiff and appellant.

Cheryle Wiedmeier Gering, Susan Brunick Simons of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

MILLER, Retired Justice.

[¶ 1.] John Gilchrist sued Trail King Industries, Inc. seeking damages for bad faith, wrongful termination, and intentional infliction of emotional distress. Gilchrist appeals a judgment based upon a jury verdict rendered in favor of Trail King. We reverse and remand.

## FACTS AND PROCEDURE

[¶ 2.] The facts of this case are complex. Further specific details can be found in two of our earlier holdings (*Gilchrist v. Trail King Industries, Inc. and Rehabilitation Strategies, Inc.*, 2000 SD 67, 612 N.W.2d 10 (*Gilchrist I*) and *Gilchrist v. Trail King Industries, Inc.*, 2000 SD 68, 612 N.W.2d 1 (*Gilchrist II*)). For purposes of this appeal, however, we will briefly summarize the history of the case.

[¶ 3.] Gilchrist, as an employee of Trail King, was injured while taking inventory on September 1, 1994. He slipped and fell off a lift and was briefly suspended in air when a ring on his pinkie finger caught on a bracket. He sustained immediate injuries to his finger, neck, back, and shoulder. He ultimately developed carpal tunnel syndrome and severe depression.

[¶ 4.] Trail King, which is self-insured for workers' compensation, paid workers' compensation benefits to Gilchrist, including the initial cost of his medical care. After a couple months, Trail King employed Risk Strategies, Inc. (RSI) to facilitate Gilchrist's rehabilitation. Kathy Burns, an employee of RSI, was assigned to Gilchrist's case and her responsibility was to act as a sort of intermediary between Trail King and Gilchrist's doctors. Part of Burns' duties was to attend doctor appointments with Gilchrist and to keep Trail King informed of Gilchrist's medical status, including when he could return to work.

[¶ 5.] Dr. Cho, one of Gilchrist's doctors, issued Gilchrist a release to return to work for light duty under the misguided opinion that his health was improving. Furthermore, Dr. Cho was unaware that Gilchrist was suffering other symptoms

such as internal bleeding and vomiting. Although Burns, as the person hired by Trail King to oversee Gilchrist's rehabilitation program, had access to all of Gilchrist's medical records, she did not inform Dr. Cho of his other medical problems. Apparently, Dr. Cho asked Burns to give her Gilchrist's other medical records, but Burns did not send them to her. Moreover, in Dr. Cho's subsequent affidavit, she stated, "Burns ... had not kept me fully advised of John Gilchrist's ongoing treatment by other physicians at the time opinions were requested of me concerning Mr. Gilchrist's wrist problems." She further repudiated her earlier opinion that Gilchrist's back pain and carpal tunnel syndrome were not related to the work injury after she was furnished with Gilchrist's other medical records.

[¶ 6.] On December 13, 1994, Norman Tarbell, Trail King's worker compensation coordinator, met with Gilchrist to discuss his return to work. Gilchrist claims Tarbell told him he would not be receiving any further worker compensation benefits and that unless he returned to work the next day, he would be considered to have voluntarily ended his employment. After Gilchrist allegedly informed Tarbell that he was too sick to work, Tarbell told him to return the next morning and together they could call his doctors. Gilchrist never returned to work after this meeting. On December 14, 1994, Trail King sent a certified letter to Gilchrist informing him that because Dr. Cho had issued a return to work slip, he would be considered voluntarily terminated, if he did not return to work in the next forty-eight hours. (This was pursuant to Trail King's employment policy, outlined in its employee handbook, which provided that if an employee missed more than two consecutive work days without reason, he would be considered to have voluntarily terminated his employment.)

[¶ 7.] Gilchrist continued his medical treatment with several doctors, including Dr. Hoversten, with whom Trail King had arranged for an independent medical evaluation. Dr. Hoversten discovered Gilchrist had a right rotator cuff injury and carpal tunnel syndrome in both hands. He scheduled Gilchrist for surgery to correct both of these injuries at the same time. However, before such surgery and about a month later, Dr. Cho determined that the injuries to Gilchrist's right shoulder and hand were caused by his fall at work, but that the other injuries were not related to the accident. Based on this information, RSI recommended to Trail King that it not pay for the carpal tunnel surgery. After Dr. Hoversten's office was informed that Trail King would not pay for this part of the surgery, it informed Gilchrist, who in turn cancelled the entire procedure, expressing that he did not have money to pay for the uncovered part. It was Gilchrist's view that Trail King was "jerking him around."

[¶ 8.] Gilchrist filed a workers' compensation action and additionally brought a civil action against Trail King and RSI for wrongful termination, bad faith, and intentional infliction of emotional distress. The South Dakota Department of Labor initially issued a decision ruling that Gilchrist was entitled to rotator cuff surgery and carpal tunnel surgery on his right hand but denying that his severe depression, which Gilchrist claimed resulted in total disability, was caused by the work injury. Gilchrist appealed this decision to the Sixth Judicial Circuit Court which reversed the Department's ruling. It held that Gilchrist's psychological disability claim was work related and thus, compensable. However, the circuit court remanded the case to the Department for a determination of whether Gilchrist unreasonably refused or neglected to have his right rotator cuff surgery. The Depart-

ment thereafter ruled Gilchrist did not unreasonably refuse or neglect to avail himself to medical or surgical treatment and granted Gilchrist total disability benefits. That ruling was later affirmed by the Sixth Circuit Judge. In the meantime, before the Department's initial decision was reversed, Trail King and RSI both moved for summary judgment on the claims against them in the separate civil action. Those motions were heard in the Fourth Judicial Circuit Court. That judge granted summary judgment to RSI (he also entered certification under SDCL 15–6–54(b) so that an appeal could be perfected). Additionally, the circuit judge denied summary judgment to Trail King. Gilchrist appealed the Fourth Circuit Judge's grant of summary judgment to RSI, and Trail King appealed the Sixth Circuit's decision regarding the Department's workers compensation ruling.

[¶ 9.] In opinions filed concurrently, *Gilchrist I and Gilchrist II,* we affirmed both the circuit courts' decisions. We held that summary judgment was proper as to RSI and that the Department's ruling, which the Sixth Circuit affirmed, was not clearly erroneous.

[¶ 10.] Subsequently, a jury trial ensued on Gilchrist's civil action against Trail King. On October 1, 2001, the jury entered a verdict in Trail King's favor, dismissing all three of Gilchrist's cause of actions on their merits. Gilchrist appeals. Specifically, he raises the following issues:

1. Whether the trial court abused its discretion when it granted Trail King's motions in limine:

   a. prohibiting Gilchrist from referring to or presenting evidence about RSI and/or Burns; and

   b. prohibiting Gilchrist from referring to any conduct of Trail King after February 22, 1995.

2. Whether the trial court abused its discretion when it did not take judicial notice of certain facts adjudicated in previous proceedings involving Gilchrist's worker compensation claim.

3. Whether the trial court erred when it gave certain instructions to the jury at the close of the evidence.

## STANDARD OF REVIEW

[¶ 11.] A trial court's evidentiary rulings are presumed correct and are reviewed under the abuse of discretion standard. *State v. Larson,* 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17 (citing *State v. Goodroad,* 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129). "The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *Id.* (citing *Goodroad,* 1997 SD 46 ¶ 9, 563 N.W.2d at 129). Additionally, to establish that a trial court's evidentiary ruling requires reversal, it must be shown it was prejudicial. *See Joseph v. Kerkvliet,* 2002 SD 39, ¶7, n.1, 642 N.W.2d 533, 534, (citing *Carpenter v. City of Belle Fourche,* 2000 SD 55, ¶ 7, 609 N.W.2d 751, 756 (citations omitted)).

## ANALYSIS AND DECISION

[¶ 12.] **Whether the trial court abused its discretion when it granted Trail King's motions in limine.**

[¶ 13.] In its ruling granting Trail King's motions in limine, the trial court prohibited Gilchrist from mentioning Burns, the rehabilitation consultant from RSI, during the trial. The trial court also prohibited Gilchrist from introducing evidence or examining witnesses about what Trail King did or did not do after Febru-

ary 22, 1995 [1]; and, from using the affidavit of doctors or psychiatrists that were made after that date. Gilchrist argues that when the trial court granted these motions in limine, it was an abuse of discretion and that prejudicial error resulted. Specifically, he contends that "the numerous redactions of Kathleen Burns' name and activities from the evidence provided to the jury ... left a big vacuum on what Trail King knew or should have known or whether their investigation was in good faith."

[¶ 14.] We ruled in *Gilchrist I* that the actions of RSI did not support Gilchrist's causes of action against RSI for bad faith, wrongful termination, or intentional infliction of emotional distress and therefore, summary judgment was proper. Specifically, we held that "RSI has not caused additional injuries to Gilchrist such that an action for bad faith can be sustained"; *Gilchrist I*, 2000 SD 67, ¶ 23, 612 N.W.2d at 17; RSI could not be liable for wrongful termination because it was not Gilchrist's employer; *Id.* at ¶ 24, 612 N.W.2d at 17; and RSI's actions were not outrageous enough to support a cause of action for intentional infliction of emotional distress. *Id.* at ¶ 26, 612 N.W.2d at 17.

[¶ 15.] Gilchrist argues that although we previously held that RSI did not cause additional damage to Gilchrist, the actions of RSI were relevant to show what Trail King knew at the time coverage was denied to Gilchrist. He further asserts that by not being able to put any of RSI's actions into evidence, he was not able to get the full set of relevant facts before the jury and thus, could not present his theory to the jury. We agree.

[¶ 16.] After a careful review of the record, it appears that the trial court misread our holding in *Gilchrist I*. While it is true that we held that RSI did not cause any *additional* damage to Trail King, this does not mean that we found that injury was not caused at *Trail King's* direction of RSI. Certainly, Gilchrist should have been able to present evidence about what conduct by RSI could have been attributable to Trail King. At the very least, Burns' interaction with Dr. Cho and the resultant work-release order, could be characterized as troubling. The trial court abused its discretion when it did not allow Gilchrist to present this evidence to the jury.

[¶ 17.] Support of the agency relationship that existed between Trail King and RSI can be found in *Gilchrist I*, where we found that the "relationship in these circumstances is primarily between the rehabilitation company and the workers' compensation insurer," i.e., *Trail King* in this case. 2000 SD 67, ¶ 18, 612 N.W.2d at 15–16 (citing *Cole v. Byrd*, 167 Ill.2d 128, 212 Ill.Dec. 234, 656 N.E.2d 1068 (1995)). Burns, in her deposition acknowledges, "I am a coordinator, a communicator between the insurance company, the injured worker, the employer and the medical providers." *Id.* at ¶ 17, 612 N.W.2d at 15.

[¶ 18.] Once it is determined that a principal/agent relationship exists, SDCL 59–6–5 provides:

As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordi-

---

1. Gilchrist's Complaint alleged events that transpired in December, 1994 through February 22, 1995. February 22, 1995 is the day that a letter was sent to Gilchrist advising him that the laceration on his right hand, the rotator cuff tear of his right shoulder, and his upper back problems were compensable but that his carpal tunnel was not. Gilchrist did not amend his Complaint to assert any claimed improper actions after February 22, 1995.

nary care and diligence, to communicate to the other.

This statute presumes that an agent will relay to the principal all information that he or she acquires. *Shykes v. Rapid City Hilton Inn,* 2000 SD 123, ¶ 31, 616 N.W.2d 493, 500. As Trail King asserts, in a claim of bad faith against an employer, the relevant inquiry is what that employer knew at the time it denied coverage to the insured. *Julson v. Federated Mut. Ins. Co.,* 1997 SD 43, ¶¶ 6, 8, 562 N.W.2d 117, 119–20. Therefore, relevant in this analysis is the knowledge that should be imputed by RSI/Burns to Trial King at the time coverage was denied to Gilchrist. Included in this imputed knowledge would be the knowledge that Burns had of Gilchrist's medical problems, unknown to Dr. Cho but known to Burns, at the time Burns solicited the work release from Dr. Cho.

[¶ 19.] In *Walz v. Fireman's Fund Ins. Co.,* we articulated a two-prong test for bad faith in the worker's compensation context:

> [F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

1996 SD 135, ¶ 7, 556 N.W.2d 68, 70 (citing *Champion v. United States Fidelity & Guar. Co.,* 399 N.W.2d 320, 324 (S.D.1987) (additional citations omitted)).

[¶ 20.] Here, Gilchrist contends that the motion in limine, which excluded evidence relating to Burns' actions, prevented him from presenting evidence that Trail King did not have a reasonable basis for denying policy benefits. Additionally, he alleges that Trail King acted in reckless disregard, reckless indifference and did not conduct a reasonable investigation into his medical claims. Furthermore, he claims that Trail King and Burns chose to disregard the necessity of coordinating Gilchrist's medical care by all his doctors and thus, acted to conceal his other medical conditions from Dr. Cho in order to obtain a return to work slip from her. He claims that even after several of his doctors confirmed that he was experiencing carpal tunnel problems and depression, Trail King chose to disregard these facts and to continue to deny him surgical repair and benefits. We find that this evidence was highly relevant and should not have been kept from the jury.

[¶ 21.] Trail King's main argument in support of its motion in limine is that if an agent is found not liable, then the actions of the agent cannot be used to establish liability of the principal. *See Estate of Williams v. Vandeberg,* 2000 SD 155, ¶ 15, 620 N.W.2d 187, 191. However, Trail King's reliance on this point of law is misplaced. As discussed above, RSI was found not to cause further injury to Gilchrist. This does not mean that Trail King should not be held responsible for his original injury. Thus, RSI's actions were highly relevant.

[¶ 22.] As for Trail King's contention that any evidence regarding RSI would serve to confuse or mislead the jury, we disagree. We have found that the actions and knowledge of RSI were highly relevant to support the theory of Gilchrist's case; therefore, its probative value outweighs its prejudicial value. *See* SDCL 19–12–2 (FRE 402); SDCL 19–12–3 (FRE 403). Furthermore, in order to ensure that the jury does not use evidence of RSI's actions improperly, Trail King

should request the trial court to use a limiting instruction. *See* SDCL 19–9–12 (FRE 105).

[¶ 23.] Gilchrist did not amend his complaint to allege facts that occurred after February 22, 1995. Therefore, the trial court did not allow into evidence anything that happened after this date. However, Gilchrist may cure this defect in his complaint by asking the court to amend his pleadings. *See* SDCL 15–6–15(b) (FRCP 15(b)).

[¶ 24.] Based on the foregoing, we do not reach the merits of the remaining arguments.

[¶ 25.] Reversed and remanded.

[¶ 26.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, and AMUNDSON, Retired Justice, concur.

[¶ 27.] SABERS, Justice, concurs in part and dissents in part.

[¶ 28.] MILLER, Retired Justice, sitting by Order of the Court for ZINTER, Justice, disqualified.

[¶ 29.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 30.] I concur in all respects except as to paragraph 22, to which I dissent.

[¶ 31.] Even though Gilchrist did not amend his complaint to allege facts that occurred after February 22, 1995, facts occurring after that date were certainly relevant and admissible to show what Trail King knew prior to that date. Furthermore, we have consistently stated that in order to prove bad faith, it must be shown that there was 1) no reasonable basis for denial of policy benefits and 2) knowledge or reckless disregard of the lack of a reasonable basis. *Walz v. Fireman's Fund Insurance Co.*, 1996 SD 135 ¶ 7, 556 N.W.2d 68, 70; *Isaac v. State Farm Mutual Auto. Insurance Co.*, 522 N.W.2d 752, 759 (S.D.1994). Facts occurring after February 22 arguably show that Trail King persisted in a course of disregard for the opinions of doctors and psychiatrists as to Gilchrist's disability. That evidence is specifically relevant to the question of whether Trail King had a reasonable basis upon which to deny coverage. Therefore, I would reverse on Issue 1.b.

[¶ 32.] I do agree that the trial court may cure this defect by permitting an amendment to Gilchrist's pleadings, if any, on retrial.