#26590-rev & rem-JKK

**2013 S.D. 65**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| CAMERON SMITH, | Claimant and Appellant, |
| v. | |
| STAN HOUSTON EQUIPMENT CO., | Employer and Appellee, |
| and | |
| UNITED FIRE & CASUALTY CO., | Insurer and Appellee. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARY THORSTENSON
Retired Judge

* * * *

| | |
|---|---|
| MICHAEL J. SIMPSON of<br>Julius & Simpson, LLP<br>Rapid City, South Dakota | Attorneys for claimant<br>and appellant. |
| | |
| MICHAEL S. MCKNIGHT<br>MATTHEW D. MURPHY of<br>Boyce, Greenfield, Pashby & Welk, LLP<br>Sioux Falls, South Dakota | Attorneys for appellees. |

* * * *

CONSIDERED ON BRIEFS
ON MAY 20, 2013

OPINION FILED **08/21/13**

#26590

KONENKAMP, Justice

[¶1.]    In this workers' compensation case, a claimant appeals the
Department of Labor's ruling that the claimant failed to prove by a preponderance
of the evidence that his employment was a major contributing cause of his current
condition and need for treatment.  The circuit court affirmed but modified the
Department's decision.

## Background

[¶2.]    Cameron Smith, age fifty-three, has worked for over ten years as a
diesel mechanic for Stan Houston Equipment Company in Rapid City.  His job
requires heavy lifting and regular twisting.  He currently suffers from neck,
shoulder, and back pain.  Stan Houston and its insurer denied Smith's workers'
compensation claim.  The question is whether Smith's employment with Stan
Houston was a major contributing cause of his current condition and need for
treatment.

[¶3.]    In 1981, before working for Stan Houston, Smith suffered a slip and
fall at work in Sundance, Wyoming.  He was treated by a chiropractor for whiplash.
He later testified that he had recovered a year after the accident.  In late November
2008, while employed at Stan Houston, Smith had three incidents at work, which he
later claimed caused neck, back, shoulder, and arm pain.  While carrying a full load
of tools and gear, he hit his head on an overhead garage door, sending him to his
knees; he slipped on a ramp and fell to his knees and elbows; and he aggravated his
shoulders and back in dragging 6,000 feet of hose off a reel into a parking lot.
Although Smith did tell his boss about each incident, he and his boss together

decided Smith would not report the injuries for workers' compensation, but would try to work through the pain.

[¶4.]    In December 2008, the pain was too much and Smith complained to his boss. His boss recommended that he see a chiropractor. At his appointment with Dr. Jeffery Burns, a chiropractor, Smith did not tell him of the three incidents in November 2008. On his intake paperwork, he marked an "x" in two boxes indicating that his reasons for the visit were for an "old injury" and "chronic pain." He listed his injury as the 1981 whiplash incident. Dr. Burns later diagnosed Smith with thoracic segmental dysfunction, muscle spasm and joint swelling, and cervical segmental dysfunction with a guarded prognosis.

[¶5.]    Smith scheduled an appointment with Dr. Stewart Rice, a neurosurgeon. As with Dr. Burns, Smith did not tell Dr. Rice of the incidents in November 2008. Rather, he indicated that his "neck pain began in 1981 when he slipped and fell and had a whiplash type injury to his neck." Dr. Rice's notes indicate that Smith reported a "gradual increase of nagging, aching pain in the posterior cervical region, mid-back region and shoulders, as well as occasionally into the low back." Believing that Smith would benefit from chiropractic management, Dr. Rice did not recommend surgery.

[¶6.]    Shortly after his appointment with Dr. Rice, Smith had a phone conversation with Dr. Burns. He told Dr. Burns that he had had his gallbladder taken out and, according to Dr. Burns's notes, reported: "currently very painful at mid upper back and neck." Dr. Burns recommended that he see Dr. Lee Papendick for an evaluation. In March 2009, Smith saw Dr. Papendick, an orthopedic surgeon.

At that appointment, Smith again did not mention the November 2008 incidents. Dr. Papendick noted that Smith reported numbness and tingling in his hands. Dr. Papendick believed the cause was carpal tunnel syndrome and recommended an electromyogram and a nerve conduction study. Smith made a claim for workers' compensation coverage for the carpal tunnel syndrome, which was accepted and is not at issue in this appeal.

[¶7.]        In April 2009, Smith had to crawl underneath a machine and thought he had "aggravated something horribly[.]" He submitted a workers' compensation claim and three first reports of injury. In the first two reports, he indicated his date of injury as December 15, 2008, with "[n]o specific injury — pain too much to ignore." The second report of injury was the same. The third, however, listed the date of injury as April 13, 2009, and described his pain as "[r]ight arm & right shoulder unusable — extreme pain." An insurance adjuster contacted Smith. During their conversation, Smith did not tell the adjuster of the incidents in November 2008, although he did state that he had pain since December 2008, and that the recent incident caused a spike in pain.

[¶8.]        On May 6, 2009, Smith was being treated by a physical therapist for his carpal tunnel syndrome. His therapist noted, "I have great concerns concerning C-spine as cervical screen strongly suggests nerve compression issues and associated limitations as well." Smith, however, never told the therapist about his November 2008 incidents. Smith's orthopedic surgeon treating his carpal tunnel syndrome reported the therapist's concerns to Smith's workers' compensation case manager.

[¶9.]     In March 2009, Smith saw Dr. Christopher Dietrich, a physical rehabilitation specialist, for his carpal tunnel syndrome. He did not tell Dr. Dietrich of the November 2008 incidents. Smith returned to Dr. Dietrich in 2010 because of his neck, back, and shoulder pain. Dr. Dietrich continued to treat him from 2010 into 2011. Based on his treatment of Smith, Dr. Dietrich recommended aggressive physical therapy: he diagnosed neurogenic thoracic outlet syndrome, a herniated disk in the neck, thoracic pain, and compensatory thoracic kyphosis (abnormal rounding of the upper back). Because Stan Houston denied coverage for Smith's aggressive physical therapy, Smith never underwent the therapy.

[¶10.]     In July 2009, Smith underwent an independent medical exam (IME) by Dr. Wayne Anderson. In the questionnaire filled out before the exam, Smith listed the work incidents of November 2008, though he gave the date of occurrence as October 2008. Dr. Anderson later testified that he and Smith discussed the November 2008 incidents during the medical examination. As a result of his examination and review of Smith's medical record, Dr. Anderson issued a report on July 9, 2009, answering specific questions asked of him by Stan Houston's insurer. Dr. Anderson opined that the incidents of April 13, 2009, and December 15, 2008, the first report of injury dates, were not causally related to Smith's current symptoms. But he explained that in regard to the two dates, Smith complained of increased pain at those times, not of a specific injury. Nonetheless, Dr. Anderson reported that "[t]he cervical spine degenerative disease could certainly cause his low cervical and upper thoracic pain."

[¶11.] In August 2010, Smith petitioned the Department of Labor. A hearing was held in November 2011. Smith testified that he did not tell his various providers about the November 2008 incidents because he was submitting his claims to his health insurance carrier and he was concerned with getting treatment and getting back to work. The ALJ received into evidence Smith's medical records and the deposition testimony of Drs. Anderson and Dietrich.

[¶12.] During Dr. Anderson's deposition, his IME report was admitted into evidence. He testified that he believed Smith was not injured when he hit his head in November 2008 because he did not mention the incident to his treating physicians and because he told Dr. Burns he had chronic pain. Dr. Anderson also testified that thoracic kyphosis would not be caused by Smith hitting his head, but by extremely poor posture over a long period of time. Dr. Anderson did not specifically opine that Smith does *not* suffer from neurogenic thoracic outlet syndrome. Rather, he said that Smith's falling and striking his head did not cause neurogenic thoracic outlet symptoms. Dr. Anderson's conclusion was that Smith's employment was not a major contributing cause of his current condition or need for treatment. When asked "Why," Dr. Anderson emphasized that Smith did not report the November 2008 incidents to any physicians treating him and he did not complain of pain to his neck. On cross examination, however, Dr. Anderson was reminded that he wrote in his report in 2009 that Smith complained of neck pain. Thereafter, Dr. Anderson conceded that his report makes his deposition testimony less credible. He also agreed that by hitting his head on the garage door, Smith could have suffered a disk problem, which could have led to other problems and

spasms. Yet Dr. Anderson maintained that Smith's thoracic pain was unrelated to his work, concluding, "It just isn't logical to me how this occurred."

[¶13.] In Dr. Dietrich's deposition testimony, he related that he did not learn from Smith about the work injuries of November 2008; rather, Smith's attorney had told Dr. Dietrich of the incidents in a letter dated August 2, 2010. Dr. Dietrich was asked to assume those incidents had in fact happened and to opine on the effect of those incidents on Smith's current condition and need for treatment. Specifically related to Smith's neck injury, Dr. Dietrich testified,

> I believe within a reasonable degree of certainty that it is related to his work injuries that we're talking about. Mr. Smith was functioning at a very high level doing very intense heavy labor and high level work. He did report a 1980 whiplash type injury but, basically, had recovered from that. Was, you know, doing recreational pursuits. Doing very, very intense work activities essentially until these incidents. And then that led to the pursuit of, you know, fairly extensive medical care, significant functional limitations, findings on physical exam that at least as reported in all evidence that I have would show that they're related to those dates of injury and then subsequent need for treatment after that.

In regard to Smith's cervical condition, Dr. Dietrich opined,

> I think that standing upright, sustaining a hit to the top of the head or an axial load that's hard enough or severe enough to knock you to the ground certainly could put force through the neck and cause disk herniation or disk herniations there in the cervical spine.

Smith's thoracic kyphosis occurred, according to Dr. Dietrich, because, after Smith was injured, he "developed this compensatory kind of guarded spasm position or posture that I'm attributing to the injury and the neck and the way he's developed as a result of that." As to the neurogenic thoracic outlet, Dr. Dietrich opined that within a reasonable degree of medical probability "the injury to the neck and the

subsequent spasming guarding as we've described has led to this neurogenic thoracic outlet." Dr. Dietrich recommended that Smith undergo aggressive physical therapy.

[¶14.] In May 2012, the ALJ issued a memorandum decision and findings of fact and conclusions of law. The ALJ found Smith credible and accepted that the three incidents in November 2008 did in fact occur while he was working for Stan Houston. But the ALJ ruled that Smith's employment was not a major contributing cause of his current condition and need for treatment. The ALJ rejected Dr. Dietrich's opinion because Smith did not tell Dr. Dietrich about the November 2008 incidents, and Dr. Dietrich did not learn of them until August 2010, through Smith's lawyer. According to the ALJ, Dr. Dietrich's opinion was based on mere assumptions and theories because Dr. Dietrich did not have all the facts. Concluding that Smith merely proved a causal possibility, the ALJ denied Smith workers' compensation benefits.

[¶15.] Smith's appeal in the circuit court was affirmed, but modified. The ALJ had ruled that Smith failed to prove that his work was "the" major contributing cause. The circuit court modified the ruling to reflect that Smith failed to prove that his work was "a" major contributing cause of his current condition and need for treatment. Smith appeals, asserting that the Department erred when it concluded that he did not prove a causal relationship between his work injury and medical condition.

## Analysis and Decision

[¶16.]     Our standard of review in this administrative appeal is governed by SDCL 1-26-36.  *See Kuhle v. Lecy Chiropractic*, 2006 S.D. 16, ¶ 15, 711 N.W.2d 244, 247 (citations omitted).  To prevail, Smith had to prove a causal connection between his employment at Stan Houston and his current condition and need for treatment.  *See Rawls v. Coleman-Frizzell, Inc.,* 2002 S.D. 130, ¶ 20, 653 N.W.2d 247, 252 (citation omitted); SDCL 62-1-1(7).  Expert testimony is necessary to establish causation.  *Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D. 1992); *see Vollmer v. Wal-Mart Store, Inc.*, 2007 S.D. 25, ¶ 14, 729 N.W.2d 377, 382.  Smith's employment or employment related activities must have been a major contributing cause of his current condition.  *See Vollmer,* 2007 S.D. 25, ¶ 13, 729 N.W.2d at 382; SDCL 62-1-1(7)(a).  Smith was not required to prove that his employment was the proximate, direct, or sole cause of his injury.  *See id.*

[¶17.]     The ALJ noted that "the experts agree that it was possible that hitting his head could be a major contributing cause of Claimant's condition," but Smith "had a history of previous injuries and treatment and the incidents in 2008 were not reported to any physician to allow them to offer an opinion whether those incidents combined with [his] previous work related injuries and condition to remain [sic] a major contributing cause of his current condition and need for treatment."  Ruling that it is "unclear exactly what is the cause of [Smith's] cervical and thoracic pain," the ALJ found that Dr. Dietrich's expert testimony lacked the necessary foundation, because Smith failed to tell his doctors about the November 2008 incidents, and therefore, Dr. Dietrich was unable to give an unequivocal opinion on causation.  Yet

the ALJ specifically found that Smith was credible and that the November 2008 incidents in fact occurred.

[¶18.] Witness credibility is a question of fact. *Kuhle*, 2006 S.D. 16, ¶ 15, 711 N.W.2d at 247 (citations omitted). We defer to the ALJ's credibility determination and the finding that the November 2008 incidents occurred as Smith described them. But because the medical evidence in this case was offered through deposition testimony, our review of that evidence is without deference to the ALJ. *See Vollmer*, 2007 S.D. 25, ¶ 12, 729 N.W.2d at 382. And the ALJ's conclusions of law are reviewed de novo, as well. *Kuhle*, 2006 S.D. 16, ¶ 16, 711 N.W.2d at 247.

[¶19.] Our review of the ALJ's findings does not support the conclusion that Smith failed to prove causation by a preponderance of the evidence. The ALJ found Smith credible, thus accepting that the November 2008 incidents occurred while Smith was working at Stan Houston. The ALJ found that Smith reported to multiple medical providers that he was experiencing neck, shoulder, and upper back pain. Finally, the ALJ found that the "experts agree" that hitting his head could be a major contributing cause of Smith's current condition. Therefore, it is illogical that Smith failed to establish causation by a preponderance of the evidence when (1) the ALJ accepted that Smith hit his head, fell to his knees and elbows, aggravated his shoulders by reeling hose, and testified credibly, *and* (2) the ALJ found that both experts opined that *if* the November 2008 incidents occurred, Smith's current condition and need for treatment was causally connected to his employment.

[¶20.]     That the ALJ erred is further evident in the flawed holding that Dr. Dietrich's expert opinion lacked the necessary foundation because Dr. Dietrich did not know of Smith's November 2008 incidents until August 2010. On the date Dr. Dietrich was deposed, May 5, 2011, he had known of Smith's November 2008 incidents for almost a year, and during that year, he had continued to treat Smith for his current condition. Dr. Dietrich is board certified in physical medicine and rehabilitation, specializing in medical treatments related to conditions such as thoracic outlet syndrome. His opinion was founded on his experience and education, his history of treating Smith, the information learned from Smith's counsel on the 2008 incidents, his knowledge of the strenuous nature of Smith's job, and information that Smith suffered a whiplash injury in 1981. Thus, Dr. Dietrich's expert opinion was well founded. Moreover, although Dr. Dietrich was asked to assume certain facts — that the November 2008 incidents occurred — the ALJ accepted that the incidents occurred and found Smith credible. By rejecting Dr. Dietrich's expert opinion because Dr. Dietrich relied on assumptions, which assumptions the ALJ accepted as fact, the ALJ erred.

[¶21.]     Nonetheless, the ALJ accepted Dr. Anderson's opinion that Smith's current condition and need for treatment is not related to his employment. Yet Dr. Anderson based his opinion on the fact that Smith did not report the November 2008 incidents to his medical providers. He explained that he did not assume that the incidents occurred in forming his opinion. Moreover, Dr. Anderson testified that his opinion was less credible because it differed from his 2009 evaluation report, in

which he noted that Smith's "cervical spine degenerative disease could certainly cause his lower cervical and upper thoracic pain."

[¶22.]     From our de novo review of the depositions and Smith's medical record, and from the fact that the ALJ found Smith credible and that the November 2008 incidents did indeed occur, we conclude that Smith established by a preponderance of the evidence that his employment at Stan Houston was a major contributing cause of his current condition and need for treatment.  It was error for the ALJ and the circuit court to rule that there was no causation.

[¶23.]     Reversed and remanded.

[¶24.]     ZINTER, SEVERSON, and WILBUR, Justices, concur.

[¶25.]     GILBERTSON, Chief Justice, deeming himself disqualified, did not participate.