#28652-a-SRJ
**2019 S.D. 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHRISTINA BLANCHARD,                           Plaintiff and Appellant,

v.

MID-CENTURY INSURANCE
COMPANY, also known as
FARMERS INSURANCE,                             Defendant and Appellee,

v.

MID-CENTURY INSURANCE                          Third-Party Plaintiff and
COMPANY,                                       Appellee,

v.

ERIC C. BLOMFELT, and ERIC
BLOMFELT & ASSOCIATES, P.C.,                   Third-Party Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK E. SALTER
Judge

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 19, 2019
OPINION FILED **09/11/19**

HEATHER LAMMERS BOGARD of
Costello, Porter, Hill, Heisterkamp,
   Bushnell & Carpenter, LLP
Rapid City, South Dakota

Attorneys for plaintiff
and appellant.


MICHAEL F. TOBIN
MITCHELL W. O'HARA of
Boyce Law Firm, LLP
Sioux Falls, South Dakota

Attorneys for appellee Mid-
Century Ins. Co. a.k.a. Farmers
Ins.

#28652

JENSEN, Justice

[¶1.]        Christina Blanchard filed this complaint for bad faith against Mid-Century Insurance Company, alleging that Mid-Century pursued a "baseless and meritless appeal" from a decision of the South Dakota Department of Labor (Department) awarding Blanchard workers' compensation benefits.  The circuit court granted Mid-Century's motion for summary judgment on the bad faith complaint.  Blanchard appeals, arguing the circuit court erred by failing to consider all the facts supporting Mid-Century's bad faith conduct, failing to impute the knowledge and actions of Mid-Century's attorney to Mid-Century, erroneously adding an additional element to the tort of insurance bad faith, and incorrectly excluding evidence under the litigation conduct rule.  We affirm.

**Facts and Procedural History**

[¶2.]        From March 2008 to January 2011, Blanchard was employed by Millstone II, Inc. (Millstone), a restaurant located in Rapid City.  In August 2010, she began to experience persistent lower-back pain after lifting boxes at work.  Blanchard sought medical treatment for her back pain on September 23, 2010.  As her pain worsened, Blanchard began missing work and struggled to perform her job duties.  Millstone terminated Blanchard's employment in January 2011.  Thereafter, Mid-Century, Millstone's workers' compensation carrier, began paying temporary total disability benefits to Blanchard.  On July 22, 2011, Blanchard's treating physician determined she had reached maximum medical improvement.  He rated Blanchard with a five-percent whole-person impairment, and a permanent lifting restriction of twenty pounds.  Mid-Century stopped paying benefits to

-1-

Blanchard in August 2011. Blanchard did not find employment that accommodated her work restrictions until August 2012.

[¶3.] Blanchard filed a petition with the Department in November 2011, seeking continuing benefits. The Department held an evidentiary hearing on Blanchard's petition in March 2014. The administrative law judge awarded Blanchard benefits, determining that her work activities at Millstone were a major contributing cause of her back pain and her inability to work. The decision directed Blanchard to submit proposed findings of fact, conclusions of law, and an order within twenty days. Millstone/Mid-Century was directed to submit objections and/or proposed findings of fact and conclusions of law within twenty days after Blanchard's submissions.

[¶4.] Eric Blomfelt, defense counsel for Millstone/Mid-Century, informed Mid-Century's claim adjuster, Beth Neu, of the adverse decision on July 21, 2014. Neu and Blomfelt discussed the case, including whether to appeal the decision to circuit court. Blomfelt explained to Neu that the Department's decision generally accepted the testimony of Blanchard's treating physician, while discounting the testimony from the doctor who conducted an independent medical examination for Millstone/Mid-Century. Blomfelt advised Neu that a decision finding one expert more credible than another is ordinarily not a good candidate for appeal. However, Blomfelt recommended appealing this decision because he believed deficiencies existed in the opinions offered by Blanchard's treating physician. In particular, Blomfelt noted that Blanchard's treating physician lacked knowledge regarding the scope of Blanchard's job duties at Millstone.

[¶5.] Neu directed Blomfelt to file an appeal to the circuit court. While waiting for entry of the final order, Neu emailed Blomfelt for updates on the status of the case and asked if Blanchard might be open to settling. Blomfelt suggested waiting to discuss settlement, because Blanchard would not "have much motivation to settle" since she won at the administrative hearing.

[¶6.] Blanchard timely submitted proposed findings of fact, conclusions of law, and an order, requiring Millstone/Mid-Century to pay Blanchard's medical expenses related to the injury. Millstone/Mid-Century was also ordered to pay $18,763.16 in temporary total benefits for the period from August 25, 2011 through August 1, 2012. On September 2, 2014, Blomfelt submitted proposed findings of fact and conclusions of law on behalf of Millstone/Mid-Century that agreed in all material respects with the Department's decision, including the compensability of Blanchard's injuries. Blomfelt also failed to submit objections to Blanchard's proposed findings of fact and conclusions of law. Blomfelt did not provide a copy of his proposed findings of fact and conclusions of law to Neu or Mid-Century. Millstone/Mid-Century timely appealed the decision on October 13, 2014.

[¶7.] At his deposition, Blomfelt admitted he had received a letter from Blanchard's counsel in early November 2014 advising that Blomfelt's proposed findings of fact and conclusions of law failed to preserve error for appellate review of the Department's decision. The letter claimed that this omission rendered the appeal infirm. Blomfelt did not provide a copy of the letter to Neu or discuss it with her.

[¶8.]     Blanchard moved to dismiss the appeal on November 14, 2014, arguing that Millstone/Mid-Century failed to preserve objections to the findings of fact and conclusions of law. Blomfelt informed Neu by email on November 30th that Blanchard had filed a motion to dismiss. Blomfelt did not provide a copy of the motion to dismiss or explain the basis for the motion to Neu.[1] While discussing the motion to dismiss, Blomfelt also recommended that Mid-Century should explore settlement with Blanchard's counsel. Blomfelt sent a letter to Blanchard's counsel on November 30th asking if Blanchard was interested in discussing settlement. Blanchard rejected this overture. Blomfelt filed a resistance to the motion to dismiss and an appeal brief on behalf of Millstone/Mid-Century.

[¶9.]     On December 11, 2014, Blanchard's counsel sent correspondence to Blomfelt claiming that Blanchard was "in severe financial distress" and "on the verge of having her vehicle repossessed and [could not] pay her rent" due to Mid-Century not paying her benefits. The letter also stated Blanchard's belief that Mid-Century was acting in bad faith by pursuing a meritless appeal in hopes of settling for less than Mid-Century had already conceded it owed under the Department's decision. Blomfelt did not inform Neu of this second letter.

---

1.     Neu made the following notations in response to this communication:

> Received email from [Blomfelt] dated 11/30/14. He states that he is filing a brief. [Blanchard] will then respond w/brief of their own. [Blanchard] has filed motion to dismiss the appeal. [Blomfelt] states that this is not unusual, but their motion is not very well grounded. [Blomfelt] states we may have a hearing on the motion. It just depends how the [judge] wants to treat the motion.

[¶10.]     On December 30, 2014, the circuit court granted Blanchard's motion to dismiss explaining Millstone/Mid-Century "actually made no indication that [it] disagreed with the Department's findings" and their appeal "directly contradicts the proposed findings of fact and conclusion[s] of law [Mid-Century] submitted to the Department." Mid-Century first learned the motion to dismiss had been granted in an email from Blomfelt to Neu on January 6, 2015. Millstone/Mid-Century did not appeal the dismissal and immediately paid Blanchard's workers' compensation award in accordance with the Department's decision.

[¶11.]     On March 16, 2015, Blanchard filed this bad faith action claiming Mid-Century pursued a "baseless and meritless appeal in an attempt to delay or avoid payment of that claim or settle that claim in an amount less than that indisputably due to Plaintiff . . . ." Blanchard further alleged that the entire purpose of the appeal was to try to exploit her "desperate need for money by intentionally offering to settle [her] claim for less money[,]" causing her "to incur significant legal fees and costs."[2]

[¶12.]     Mid-Century initially moved for summary judgment on Blanchard's bad faith claim and moved to exclude certain evidence under the litigation conduct rule. *See generally Dakota, Minn. & E.R.R. Corp. v. Acuity (DM&E)*, 2009 S.D. 69, 771 N.W.2d 623 (explaining the litigation conduct rule). The circuit court denied the motion without prejudice, explaining the factual record was not adequately

---

2.     As part of her motion to dismiss the administrative appeal, Blanchard requested attorney's fees under SDCL 58-12-3 (awarding attorney's fees where an insurer's failure to pay benefits is "vexatious or without reasonable cause"). The circuit court did not award attorney's fees to Blanchard after dismissing the appeal. Blanchard did not appeal that ruling.

developed concerning Mid-Century's knowledge. Mid-Century subsequently filed a third-party complaint against Blomfelt for professional negligence and indemnity.

[¶13.] On August 1, 2017, Mid-Century renewed its motion for summary judgment and again moved to exclude evidence of Mid-Century's litigation conduct. Mid-Century argued that evidence of its litigation conduct was not admissible, and the evidence did not establish that Mid-Century "denied her claim for further workers' compensation benefits without a reasonable basis, or that it knew or recklessly disregarded the lack of a reasonable basis for denial." In her resistance, Blanchard argued that Blomfelt's knowledge should be imputed to Mid-Century. Blanchard further argued that Mid-Century's conduct was admissible because the litigation conduct rule did not protect the decision to pursue a meritless appeal and attempt to settle for less than had already been conceded to be owed.

[¶14.] Following a hearing, the circuit court granted summary judgment to Mid-Century. The court explained that Blanchard could not satisfy the standard for bad faith as she could not prove Mid-Century "knew of or acted with reckless disregard of counsel's conduct." The circuit court emphasized that Blanchard's bad faith claim was "narrow" because "she does not seem to claim the decision to appeal, itself, is bad faith. Instead, she claims Blomfelt's findings and conclusions rendered [Mid-Century's] continued denial of benefits during the pendency of the appeal frivolous." The court reasoned that the determination to file the appeal was made before Blomfelt submitted the proposed findings of fact and conclusions of law. Further, the court concluded that the litigation conduct rule precluded evidence of Blomfelt's conduct after the appeal was filed as it did not "shed light" on the

reasonableness of Mid-Century's decision to "pursue an appeal on the merits of the case" and was inadmissible under Rule 403.[3]

[¶15.]   Blanchard appeals arguing the circuit court erred in granting summary judgment on Blanchard's claim for bad faith against Mid-Century.

### Standard of Review

[¶16.]   "We review a circuit court's entry of summary judgment under the de novo standard of review." *Heitmann v. Am. Family Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508.  On appeal, we must "determine whether genuine issues of material fact exist and whether the law was applied correctly." *Western Nat'l Mut. Ins. Co. v. Gateway Bldg. Sys., Inc.*, 2016 S.D. 85, ¶ 7, 887 N.W.2d 887, 890.  "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 11, 763 N.W.2d 800, 804.  "We will affirm a circuit court's decision so long as there is a legal basis to support its decision." *Heitmann*, 2016 S.D. 51, ¶ 8, 883 N.W.2d at 509.

[¶17.]   A court's evidentiary rulings in summary judgment proceedings are reviewed for an abuse of discretion. *Hamilton v. Sommers*, 2014 S.D. 76, ¶ 18, 855 N.W.2d 855, 861.  *See also Burley v. Kytec Innovative Sports Equip., Inc.,* 2007 S.D. 82, ¶ 12, 737 N.W.2d 397, 402 (reviewing a circuit court's decision to admit or deny an expert's testimony in a summary judgment proceeding for abuse of discretion); *Andrushchenko v. Silchuk*, 2008 S.D. 8, ¶ 15, 744 N.W.2d 850, 856 (determining the

---

3.   Blanchard also moved for summary judgment on Mid-Century's third-party complaint against Blomfelt.  The circuit court denied the motion as moot, which has not been challenged on appeal.

circuit court did not abuse its discretion in determining certain documents submitted in a summary judgment proceeding lacked foundation). An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Thurman v. CUNA Mut. Ins. Soc'y,* 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616.

## Analysis and Decision

*Whether the circuit court erred in granting summary judgment on Blanchard's bad faith claim.*

[¶18.]     "[I]n South Dakota a workers' compensation bad faith claim derives from the first-party bad faith context, [but] it is nevertheless a distinct cause of action." *Hein v. Acuity*, 2007 S.D. 40, ¶ 14, 731 N.W.2d 231, 236. "First-party bad faith, . . . is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." *Id.* ¶ 10, 731 N.W.2d at 235. First-party bad faith may also "extend to situations beyond mere denial of policy benefits," including the failure to conduct a reasonable investigation as required by the insurance contract. *DM&E*, 2009 S.D. 69, ¶¶ 18-19, 771 N.W.2d at 629. However, "there exists a key difference between bad faith in a workers' compensation action and bad faith in a traditional first-party insured-insurer relationship" because there is no contractual relationship between a claimant and the workers' compensation carrier. *Hein*, 2007 S.D. 40, ¶ 13, 731 N.W.2d at 236. Thus,

> workers' compensation bad faith will not arise whenever an insurer's conduct toward a claimant is unreasonable. Rather, to establish bad faith, the claimant must show that there has been

(1) "an absence of a reasonable basis for denial of policy benefits" and (2) "the [insurance carrier's] knowledge or reckless disregard of [the lack of] a reasonable basis for denial . . . ."

*Id.* ¶ 18, 731 N.W.2d at 237 (quoting *Champion v. U.S. Fid. & Guar. Co.*, 399 N.W.2d 320, 324 (S.D. 1987)).

[¶19.] Further, "we have recognized the right of [a workers' compensation] insurer to challenge claims which are fairly debatable." *DM&E*, 2009 S.D. 69, ¶ 20, 771 N.W.2d at 630. "An insurer is liable to a claimant *only* when it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Hein*, 2007 S.D. 40, ¶ 18, 731 N.W.2d at 237. "The questions of whether the insurer's actions were unreasonable or whether the claim was fairly debatable must be viewed *at the time the insurer made the decision to deny or litigate the claim, rather than pay it.*" *DM&E*, 2009 S.D. 69, ¶ 21, 771 N.W.2d at 630 (emphasis added). "The question of whether an insurer has acted in bad faith is generally a question of fact." *Id.* ¶ 19, 771 N.W.2d at 629-30.

1. *Whether Mid-Century's decision to appeal the Department's decision was made in bad faith.*

[¶20.] Blanchard contends Mid-Century acted in bad faith when it decided to appeal the Department's decision because (1) Neu failed to comply with Mid-Century's internal policies requiring an adjustor to obtain appeal authority from a supervisor; (2) Neu failed to comply with internal policies requiring its adjustors to obtain all "legal pleadings, notices or Board decisions" and "any information that could significantly affect case outcome"; (3) Neu relied on Blomfelt's advice despite evidence that Blomfelt had interposed "frivolous defenses" and failed to provide competent representation in prior workers' compensation cases he defended for

Mid-Century; (4) Neu believed the Department's decision had awarded Blanchard permanent disability benefits; and (5) the decision to appeal was part of a strategy to pressure Blanchard into settling for less than the Department had awarded.

[¶21.]    Assuming admissibility, none of the evidence cited by Blanchard creates a question of fact as to whether Mid-Century's decision to appeal the Department's decision was made in bad faith.[4]  Unreasonable conduct by a workers' compensation carrier, in and of itself, does not prove bad faith.  The claimant must present evidence of the "absence of a reasonable basis for denial of policy benefits" to prove bad faith arising from a workers' compensation claim.  *Hein*, 2007 S.D. 40, ¶ 18, 731 N.W.2d at 237.

[¶22.]    Mid-Century's decision to appeal was premised on Blomfelt's recommendation that the opinions of claimant's treating physician were deficient and could be challenged on de novo review to the circuit court.  *See Smith v. Stan Houston Equip. Co.*, 2013 S.D. 65, ¶ 18, 836 N.W.2d 647, 652 ("[B]ecause the . . . evidence in this case was offered through deposition testimony, our review of that evidence is without deference to the [administrative law judge].").  The summary judgment record shows that the parties presented disputed expert testimony before the Department on the question whether Blanchard's injuries were compensable.

---

4.    Mid-Century argues that some of this evidence is inadmissible under the litigation conduct rule set forth in *DM&E*, 2009 S.D. 69, 771 N.W.2d 623. Mid-Century also argues that some of the evidence is inadmissible under SDCL 19-19-404(b).  It is not clear from the record if Mid-Century raised these specific evidentiary issues in its motion in limine, or if the circuit court addressed these issues.  Because we conclude the evidence does not create a fact question as to whether Mid-Century's initial decision to appeal was unreasonable, it is unnecessary to consider these evidentiary issues.

Further, Blanchard does not claim that Blomfelt's recommendation to appeal the decision was erroneous, or that it lacked a reasonable basis under South Dakota law. Because the Department's factual determinations were fairly debatable on appeal, Blanchard has failed to present facts to support her claim that Mid-Century's decision to appeal was unreasonable.

2. *Whether the circuit court erred in granting summary judgment on Mid-Century's conduct following the decision to appeal the Department's decision.*

[¶23.] The essence of Blanchard's bad faith claim arose after Mid-Century decided to appeal the Department's decision. Blanchard argues the circuit court made several errors in granting summary judgment on this claim. She initially argues the court erred by requiring her to show an additional element of a "dishonest purpose" to prove bad faith. Blanchard also argues the circuit court erred by failing to consider the imputed knowledge from Blomfelt to Mid-Century. Finally, Blanchard contends the court erred by determining the post-filing conduct lacked relevance and was inadmissible under the litigation conduct rule. We conclude the circuit court's exclusion of the evidence under the litigation conduct rule is determinative of the appeal.

[¶24.] In *DM&E*, we addressed the litigation conduct rule, which limits evidence of bad faith conduct during the litigation. 2009 S.D. 69, ¶ 42, 771 N.W.2d at 635. *DM&E* involved a first-party bad faith claim in which the insured alleged its insurer improperly investigated and denied a claim for uninsured motorist coverage before the commencement of litigation. The insured argued the actions and conduct of the insurer during the subsequent litigation presented additional

evidence of bad faith conduct on the part of the insurer. Here, Blanchard offers litigation conduct as the entire basis for her bad faith claim.

[¶25.] After addressing the important policy reasons for excluding most post-filing conduct, *DM&E* stated that "courts have strictly limited the type of post-filing conduct that may be used as evidence of the insurer's bad faith." *Id.* ¶ 37, 771 N.W.2d at 634. In limiting the admissibility of this evidence, we required that evidence of post-filing conduct by the insurer must shed "light on the reasonableness of the insurer's decision or conduct in denying insurance benefits[]" to be admissible. *Id.* ¶ 42, 771 N.W.2d at 635. We further stressed the importance of the court balancing the probative value of such evidence against its prejudicial impact under SDCL 19-19-403. The Court emphasized that "it would be a rare case where the insurer's decisions and conduct in the underlying litigation would be admissible in a first-party bad faith claim." *Id.*

[¶26.] More recently in *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, 915 N.W.2d 697 (*reh'g denied* Aug. 13, 2018), we discussed the admissibility of post-litigation conduct evidence in another first-party bad faith case. In *Harvieux*, the insurer filed a motion to enforce an earlier alleged settlement agreement. The insured claimed the motion was frivolous and evidenced ongoing bad faith by the insurer in failing to reasonably settle an uninsured motorist claim. *Harvieux*, 2018 S.D. 52, ¶ 11, 915 N.W.2d at 701. In granting summary judgment, the circuit court excluded evidence of the motion to enforce the settlement agreement under the litigation conduct rule. We affirmed, stating that "litigation conduct by the insurer is generally not relevant to a claim of first-party bad faith," and did not

shed light on the investigation or valuation of the case at the time the insurer considered the claim. *Id.*

[¶27.] Here, in considering the post-appeal evidence, the circuit court stated it was unable to discern how questions concerning Blomfelt's professional conduct during the appeal supported bad faith conduct on the part of Mid-Century. The court also determined that any probative value was substantially outweighed by "the danger of confusing the issues and the likelihood that the jury would become involved in a collateral 'mini-trial' on the 'finer points of administrative law and appellate practice.'" We agree.

[¶28.] The inadequacy of Blomfelt's objections to the Department's findings and his responses to Blanchard's claims of procedural missteps simply do not provide evidence to support a claim for intentional bad faith on the part of Mid-Century.[5] These subsequent procedural issues do not shed light on whether Mid-Century acted in bad faith in handling the claim for benefits, or deciding to appeal the Department's decision. Instead, the evidence merely reflects Blomfelt's professional judgment and actions in handling procedural aspects of the appeal. Post-litigation conduct is generally not relevant because "the focus of a bad faith claim is the insurer's knowledge and belief during the time the claim is being

---

5.   Likewise, Mid-Century's effort to initiate settlement with Blanchard during this time was limited to inquiring whether Blanchard wished to engage in settlement discussions. The record does not reflect any terms or conditions of settlement that were discussed because Blanchard was not interested in pursuing these discussions. This evidence does not support a claim for bad faith in the workers' compensation context.

reviewed." *DM&E*, 2009 S.D. 69, ¶ 42, 771 N.W.2d at 635-36. As a result, "the relevance of the litigation conduct is severely diminished." *Id.*

[¶29.] Blanchard argues the evidence is relevant because Blomfelt's knowledge that the appeal had been judicially conceded should be imputed to Mid-Century under SDCL 59-6-5 and *Gilchrist v. Trail King Indus., Inc.* (*Gilchrist II*), 2002 S.D. 155, 655 N.W.2d 98.[6] With this imputed knowledge, Blanchard contends that Mid-Century acted in bad faith when it continued to prosecute the appeal and attempted to settle with Blanchard for less than it had already judicially conceded was owed.

[¶30.] Even if Blomfelt's knowledge is imputed to Mid-Century, a review of *Gilchrist II* shows that it is inapposite. In *Gilchrist II*, a claimant sued his former employer, who was self-insured, and its third-party rehabilitation specialist for bad faith, wrongful termination and intentional infliction of emotional distress arising from a workers' compensation claim. The claimant alleged that the employer and rehabilitation specialist had engaged in bad faith to diminish the value of his claim by failing to disclose the extent of his work-related injuries to medical providers during the claims process.[7] In concluding the rehabilitation specialist's imputed knowledge was admissible, the Court noted this imputed knowledge arose during

---

6. Blanchard cites a number of cases holding that a judicial admission by an attorney is binding on the client. *In re Estate of Tallman,* 1997 S.D. 49, ¶ 13, 562 N.W.2d 893, 896; *Stemper v. Stemper,* 415 N.W.2d 159, 160 (S.D. 1987); *see also Heesch v. Swimtastic Swim Sch.*, 823 N.W.2d 211, 222 (Neb. 2012).

7. The claims against the rehabilitation specialist were dismissed before trial and this Court affirmed that decision. *See Gilchrist v. Trail King Indus., Inc. & Rehab. Strategies, Inc. (Gilchrist I)*, 2000 S.D. 67, 612 N.W.2d 10.

the claim's handling process. This contested evidence included the failure of the rehabilitation specialist to disclose the extent of the claimant's injuries to the physician assessing claimant's ability to work. *Gilchrist II,* 2002 S.D. 155, ¶ 18, 655 N.W.2d at 103.

[¶31.] The imputed knowledge of the rehabilitation specialist in *Gilchrist II* was highly probative to the question of what the employer knew, or recklessly disregarded, at the time it considered the claim for benefits. In contrast, the evidence that Blanchard seeks to introduce involves only subsequent procedural litigation questions as to whether Blomfelt properly preserved objections to the Department's decision. The fact that Blomfelt may have unwittingly conceded the merits of Mid-Century's appeal is not relevant to what Mid-Century knew when it decided to appeal the Department's decision. As the Court stated in *Gilchrist II*, "in a claim of bad faith against an employer, the relevant inquiry is what that employer knew at the time it denied coverage to the insured." *Id.*

[¶32.] Blanchard also relies on our statement in *DM&E,* that an insurer may have a duty to reassess a decision denying coverage based upon subsequent information it receives. However, we have not discussed the parameters of this ongoing duty *after* litigation has commenced. "A review of these cases demonstrates that each involved decisions or conduct by the insurer *prior to the institution of litigation* on the underlying claim." *DM&E,* 2009 S.D. 69, ¶ 34, 771 N.W.2d at 633 (emphasis added); *see also Walz v. Fireman's Fund Ins. Co.*, 1996 S.D. 135, 556 N.W.2d 68 (addressing an insurer's failure to review pertinent legal authority

provided by claimant's counsel after insurer's initial decision to deny coverage but prior to the ensuing litigation).

[¶33.]　　　Further, we have never extended an insurer's duty of good faith to require an insurance carrier to reassess a claim because of procedural errors by the carrier's defense counsel conceding the validity of the claim during the litigation. Blanchard's bad faith claim is premised on adding this layer of liability to our bad faith doctrine in the workers' compensation realm, but she fails to cite any authority to support such a proposition.[8]  Bad faith arising from a workers' compensation claim is "an intentional tort and typically occurs when an insurance company *consciously* engages in wrongdoing during its processing or paying of policy benefits to its insured." *Hein*, 2007 S.D. 40, ¶ 10, 731 N.W.2d at 235 (emphasis added).  The tort occurs when an "insurer breaches its duty to deal in

---

8.　　Blanchard cites two workers' compensation cases where each court affirmed an award of attorney fees to a claimant under a statute, similar to SDCL 58-12-3, allowing attorney fees to be assessed against an insurer when there was no reasonable controversy concerning a claim for benefits: *Heesch*, 823 N.W.2d 211, 222 (Neb. 2012), and *Williams v. KW Prod., Inc.*, 784 N.W.2d 202 (Iowa Ct. App. 2010).  However, these cases did not involve bad faith claims.  In each case, the attorney for the carrier conceded issues in the course of the workers' compensation litigation that were deemed conclusive of the claimant's request for benefits.  It is unclear whether the insurance carrier knew about or authorized these admissions by counsel.  The courts nevertheless affirmed the agency's determination in each instance, concluding that the carrier was bound by the judicial admissions of the attorney.  The results in both cases were much the same as the result in the underlying workers' compensation case here.  Because Blomfelt failed to adequately preserve appellate error, Mid-Century became obligated to pay Blanchard's claim.  However, these results should not be confused with the proof necessary for bad faith on the part of the insurer at the time it considers the claim.

good faith and fairly when processing a workers' compensation claim." *Hein*, 2007 S.D. 40, ¶ 11, 731 N.W.2d at 235.

[¶34.] The evidence Blanchard seeks to introduce does not reflect on the reasonableness of Mid-Century's decision to appeal or whether they knew or recklessly disregarded information concerning the reasonableness of this decision. Further, there are no facts supporting a finding that Mid-Century acted recklessly or in reckless disregard of Blomfelt's procedural missteps conceding the merits of the appeal. To extend the scope of bad faith as Blanchard proposes would expose insurers to liability occurring as a result of negligent procedural errors by defense counsel and would require insurance providers to become legal experts capable of recognizing procedural missteps by counsel during the litigation. Such an expansion of the bad faith doctrine is not supported by our case law or the facts before the Court. We determine the circuit court did not abuse its discretion in excluding this evidence under the facts of this case.

[¶35.] We hold that the circuit court properly excluded the evidence from the time the decision to appeal was made until the appeal was dismissed. Therefore, the circuit court properly granted summary judgment to Mid-Century based upon the other undisputed facts in the record. In light of our decision, it is unnecessary to discuss Blanchard's other claims of error. *See Hass v. Wentzlaff*, 2012 S.D. 50, ¶ 11, 816 N.W.2d 96, 101 ("If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.").

[¶36.] GILBERTSON, Chief Justice, KERN and DEVANEY, Justices, and KONENKAMP, Retired Justice, concur.

#28652

[¶37.]        SALTER, Justice, disqualified.